**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SHOLA ODEYALE**<br><br>**Plaintiff,**<br><br>v.<br><br>**ARAMARK MANAGEMENT SERVICES<br>LIMITED PARTNERSHIP,**<br><br>**Defendant.** | Civil Action No.  1:05CV02250 RMC |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
<u>SUPPORT OF DEFENDANT ARAMARK'S MOTION FOR SUMMARY JUDGMENT</u>**

Grace E. Speights (D.C. Bar No. 392091)
Katherine J. Emig (D.C. Bar No. 496410)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
Phone:  (202) 739-3000
Fax:  (202) 739-3001

*Counsel for Defendant
ARAMARK Management Services
Limited Partnership*

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C. Cir. 1998) .............................. 9

*Akers v. Alvey*, 338 F.3d 491 (6th Cir. 2003) ................................................................. 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................... 3

*Barnett v. Department of Veterans Affairs*, 153 F.3d 338 (6th Cir. 1998)...................... 11

*Bryant v. Brownlee*, 265 F. Supp. 2d 52 (D.D.C. 2003) .............................................. 8, 11

*Buggs v. Powell*, 293 F. Supp. 2d 135 (D.D.C. 2003) ...................................................... 9

*Carpenter v. Federal National Mortgage Association*, 174 F.3d 231 (D.C. Cir. 1999)............................................................................................................... 15

*Chaple v. Johnson*, 453 F. Supp. 2d 63 (D.D.C. 2006) ................................................... 4

*Conto v. Concord Hospital, Inc.*, 265 F.3d 79 (1st Cir. 2001) ........................................ 7

*Cooper v. John D. Brush & Co.*, 242 F. Supp. 2d 261 (W.D.N.Y. 2003) ...................... 11

*Daso v. Grafton School, Inc.*, 181 F. Supp. 2d 485 (D. Md. 2002)................................ 6

*Francis v. Board of School Commissioners of Baltimore City*, 32 F. Supp. 2d 316 (D. Md. 1999) ......................................................................................................... 7

*Goldberg v. B. Green and Co.*, 836 F.2d 845 (4th Cir. 1988)...................................10, 14

*Grady v. Affiliated Central, Inc.*, 130 F.3d 553 (2d Cir. 1997) *cert. denied,* 525 U.S. 936 (1998)....................................................................................................... 13

*Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105 (D.D.C. 2004)..........................3, 8, 9, 10

*Harris v. Forklift System*, 510 U.S. 17 (1993)................................................................. 4

*Kelley v. Billington*, 370 F. Supp. 2d 151 (D.D.C. 2005) ............................................ 4, 5

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)........................................ 8, 14

*Mitchell v. National R.R. Passenger Corp.*, 407 F. Supp. 2d 213 (D.D.C. 2005).......12, 15

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998)................................. 4

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ............................. 11

*Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131 (D.D.C. 2004) ........................ 4

*Richard v. Bell Atlantic Corp.*, 167 F. Supp. 2d 34 (D.D.C. 2001) ............................. 6, 7

*Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101 (D.D.C. 2002) .............................. 8

*Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104 (8th Cir. 1998) ........................... 11

*Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249 (10th Cir. 2001) ..................... 11

*Skipper v. Giant Food, Inc.,* 68 Fed. Appx. 393, 399 (4th Cir. 2003) ............................. 7

*Stella v. Mineta*, 284 F.3d 135 (D.C. Cir. 2002) .................................................... 8, 9, 10

*Sullivan v. The Catholic University of America*, 387 F. Supp. 2d 11 (D.D.C. 2005) .................................................................................................. 14

*Teneyck v. Omni Shoreham Hotel*, 254 F. Supp. 2d 17 (D.D.C. 2003), *aff'd*, 365 F.3d 1139, 361 U.S.App.D.C. 214 (D.C. Cir. 2004) .................................................. 9

*Tsehaye v. William C. Smith & Co.*, 402 F. Supp. 2d 185 (D.D.C. 2005) ...................... 14

*Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1 (D.D.C. 2000) ........................ 13

### STATE CASES

*Arthur Young & Co. v. Sutherland*, 631 A.2d 354 (D.C. 1993) ......................................... 4

*Mann v. First Union National Bank*, No. 05-1449, 2006 WL. 1676397 (4th Cir. 2006) .................................................................................................................. 14

*Martin v. Healthcare Bus. Resources*, 2002 WL. 467749 (E.D. Pa. Mar. 26, 2002) ....... 12

*Osuala v. Community College of Phila.*, No. 00-98, 2000 WL. 1146623 (E.D. Pa. Aug. 15, 2000) ................................................................................................ 12, 15

*Ramey v. Potomac Electric Power Co., No. Civ. A. 04-2088*, 2006 WL. 1102836 (D.D.C. March 31, 2006) ......................................................................................... 6, 7

### STATE STATUTES

D.C. Code Ann. § 2-1402.11(a)(1) (2006) ...................................................................... 3

DC Payment and Collection of Wages Act, D.C. Code § 32-1303 .................................. 1

District of Columbia Human Rights Act, D.C. Code §§ 2-1401.1-1403.17 ..................... 1

## FEDERAL RULES

Federal Rule of Civil Procedure 56(c) ............................................................................ 1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. i

INTRODUCTION .......................................................................................... 1

STANDARD FOR SUMMARY JUDGMENT ...................................................... 3

ARGUMENT ............................................................................................... 3

    A.    Plaintiff Cannot Establish A Hostile Work Environment Claim ......................... 4

        1.    Many Of The Incidents Described By Plaintiff Are Unrelated To His Race and Therefore Cannot Serve As a Basis For His Claims .......... 5

        2.    Plaintiff's Remaining Allegations Are Not Sufficiently Severe or Pervasive As To Constitute A Hostile Work Environment ..................... 6

        3.    Four Days Of Employment Cannot Be Severe Or Pervasive ................... 7

    B.    Plaintiff Cannot Establish That His Termination Was  Discriminatory Because He Has Adduced No Evidence  That ARAMARK's Actions Were Pretextual ......................................................................... 8

        1.    McDonnell Douglas Framework ................................................. 8

        2.    Mr. Odeyale Has Failed To Prove A Prima Facie  Case of Racially Discriminatory Discharge ........................................ 9

        3.    Plaintiff Cannot Establish That Mr. Noble's Decision to  Terminate His Employment Was Pretextual ...................................... 10

    C.    Plaintiff Cannot State a Claim of Retaliation ................................... 13

        1.    Legal Standard for Retaliation Claims .......................................... 14

        2.    Plaintiff Cannot Establish a Prima Facie Case Based Solely On His Own Testimony .................................................... 14

        3.    There Is No Evidence Of Pretext ................................................ 14

CONCLUSION .......................................................................................... 15

Pursuant to Local Civil Rules 7(h) and 56.1 and Federal Rule of Civil Procedure 56(c),

Defendant ARAMARK Management Services Limited Partnership ("ARAMARK") submits this

Memorandum of Points and Authorities in support of its Motion for Summary Judgment on the

claims of race discrimination and retaliation set forth in Plaintiff Ololade Shola Odeyale ("Mr.

Odeyale's" or "Plaintiff's") Complaint, and the accompanying Statement of Material Facts As

To Which There Is No Genuine Dispute ("SMF").  For the reasons explained below, this Court

should enter summary judgment against Mr. Odeyale on his claims of hostile work environment,

racially discriminatory discharge, and retaliation under the District of Columbia Human Rights

Act, D.C. Code §§ 2-1401.1-1403.17 ("DCHRA"). [1]

## I.     INTRODUCTION

This case is about Plaintiff's four-day stint as an ARAMARK employee.  Plaintiff, a

forty-five year old male born in Nigeria, alleges that these four days were "torture" during which

District Manager Phil Myers forced him to work in a warehouse storeroom, deprived him of the

opportunity to take medication, physically injured him, and called him racial epithets and other

names.  He alleges that when he complained to General Manager, Mike Noble, his employment

was immediately terminated.  Yet, after almost a full year of discovery, Plaintiff has failed to

adduce even a shred of evidence, beyond his own self-serving testimony, to support these

allegations.

 Plaintiff's claims stem from his employment with ARAMARK following the start of

ARAMARK's contract to provide housekeeping services to the Washington Convention Center

---

[1]      Plaintiff's Complaint also alleged claims of Breach of Contract (Count 4), Assault (Count 5), and Battery
(Count 6).  ARAMARK moved to dismiss these claims on November 28, 2005.  *See* Docket Entry No. 3.  Plaintiff
stipulated to the dismissal of these claims, with prejudice, on December 19, 2005.  *See* Docket Entry No. 10.
Additionally, Plaintiff alleges failure to pay timely wages upon termination under the DC Payment and Collection of
Wages Act, D.C. Code § 32-1303 (Count 3).  ARAMARK does not move for summary judgment with respect to this
count.

Authority ("WCCA").  Mr. Odeyale had been employed by WCCA as a Housekeeping

Supervisor for three years.  WCCA decided to outsource this department and abolished Mr.

Odeyale's position.  Shortly thereafter, ARAMARK recruited Mr. Odeyale and hired him as a

Housekeeping Supervisor, the same position which he had previously held for WCCA.

Mr. Odeyale's first and last week of employment was October 1, 2004.  Mr. Odeyale

reported for work, but was unhappy that he was asked to reorganize the storeroom as part of the

start-up week at the Convention Center.  As a supervisor, Mr. Odeyale expected to be managing

employees, and did not think it appropriate that he be instructed on how to complete this task,

which was necessary for the successful start of the business.  During the following four days,

Plaintiff repeatedly demonstrated an unwillingness to cooperate with ARAMARK management.

According to ARAMARK's records and the testimony of Phillip Myers, Mr. Odeyale voluntarily

resigned his employment on October 8, 2004.

Mr. Odeyale, however, paints a very different picture.  At his deposition, Mr. Odeyale

described Mr. Myers as a physically and verbally abusive task master.  Despite the fact that Mr.

Myers hired Mr. Odeyale, Mr. Odeyale claims that Mr. Myers immediately singled him out and

harassed him.  According to Mr. Odeyale, when he complained to Mr. Noble about this

treatment, Mr. Odeyale's employment was terminated.  Even assuming that Mr. Odeyale's

version of events is true, as we must for summary judgment, Plaintiff's evidence is insufficient to

survive summary judgment.  Plaintiff has utterly failed to proffer any evidence that he was the

victim of discrimination or retaliation.  As detailed in this Memorandum and the Statement of

Material Facts As to Which There Is No Genuine Dispute, Plaintiff has no legal or factual basis

to proceed under any of his claims.  Accordingly, Defendant is entitled to summary judgment on

Plaintiff's claims of race discrimination and retaliation.

## II.    STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is generally appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 112 (D.D.C. 2004) (Walton, J.).  In determining "materiality," the trial court looks to "the substantive law of the claims at issue to determine whether a fact is 'material.'" *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  An issue about a material fact is "genuine" only if it is "one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Id.* (citations omitted).

Although the court must "draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true," nevertheless, "the non-moving party must establish more than '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position.'" *Id.* (internal citations omitted).  The non-moving party cannot rely upon mere conclusory allegations, speculation, or denials, but must set forth specific facts demonstrating that there is a genuine issue for trial.  *See id.*; *see also Anderson*, 477 U.S. at 256.  Accordingly, "[i]f the evidence is merely colorable…, or is not significantly probative…summary judgment may be granted." *Gustave-Schmidt*, 360 F. Supp. 2d at 112 (citation omitted).

## III.    ARGUMENT

The DCHRA prohibits employers from discriminating with regard to the terms and conditions of employment based upon an employee's membership in a protected category (which includes, among other things, race).  D.C. Code Ann. § 2-1402.11(a)(1) (2006).  In interpreting the DCHRA, the D.C. courts have generally looked to cases from the federal courts interpreting

3

Title VII of the Civil Rights Act of 1964 and other federal anti-discrimination laws.  *See, e.g.*, *Regan v. Grill Concepts-D.C., Inc.,* 338 F. Supp. 2d 131, 134 (D.D.C. 2004); *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 n.17 (D.C. 1993).

### A.    Plaintiff Cannot Establish A Hostile Work Environment Claim[2]

To establish a *prima facie* hostile work environment claim, Mr. Odeyale must demonstrate (1) that he is a member of a protected class, (2) that he was subject to unwelcome harassment, (3) that the harassment occurred because of his race, (4) that the harassment affected a term, condition, or privilege of his employment, and (5) that the employer knew or should have known of the harassment, and failed to prevent it.  *Chaple v. Johnson*, 453 F. Supp. 2d 63, 73-74 (D.D.C. 2006) (Collyer, J.).  The workplace becomes "hostile" only when the offensive conduct "permeates the workplace with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998)

The standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code."  *Kelley v. Billington*,  370 F. Supp. 2d 151, 157 (D.D.C. 2005).  In determining whether a hostile work environment claim is substantiated, a court must look at all the circumstances of the plaintiff's employment, specifically focusing on such factors as the frequency of the discriminatory conduct, its severity, whether it is threatening and humiliating or is merely offensive, and whether it unreasonably interferes with an employee's work performance.  *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993).

---

[2]    Count One of Plaintiff's Complaint simply alleges "Race Discrimination" under the District of Columbia Human Rights Act.  *See* Compl. ¶¶19-20.  Based on Plaintiff's testimony at his deposition, Defendant assumes that Plaintiff attempts to state a hostile work environment claim.

1.    **Many Of The Incidents Described By Plaintiff Are Unrelated To His Race and Therefore Cannot Serve As a Basis For His Claims**

Many of the incidents that Mr. Odeyale alleges in support of his harassment claim bear no relationship to his race.  The hostile work environment must be the result of discrimination *based on* the plaintiff's protected status.  *Kelley v. Billington*, 370 F. Supp. 2d 151, 157 (D.D.C. 2005).  Incidents unrelated to the plaintiff's race cannot be used to support a hostile work environment claim.  *Id.* at 158 (holding that many of the incidents of harassment cited by plaintiffs were unrelated to race and therefore could not support a hostile work environment claim).

The incidents that Plaintiff alleges comprise his hostile work environment that are unrelated to race include the following:

- Myers refused to allow Plaintiff a break to take medication on two occasions. SMF at ¶ 52.

- Myers called Plaintiff names including "sickler," "chicken," "asshole," and told him, "you have no strength."  SMF at ¶52.

- Myers called Plaintiff and President Bush "dummy" after looking at his passport. SMF at ¶ 52.

- Myers crumpled and ripped Plaintiff's voter registration card.  SMF at ¶ 52.

None of these incidents are related to Mr. Odeyale's race.  Even if Myer's alleged comments were offensive to Plaintiff, they were not racial, and under District of Columbia law, merely offensive statements are not afforded protection under a hostile work environment claim.  *See Kelley v. Billington*, 370 F. Supp. 2d 151, 157 (D.D.C. 2005) *citing Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 440 (2d Cir. 1999) (claim for hostile work environment failed where only three of fifteen alleged incidents had racial overtones).

> ### 2. Plaintiff's Remaining Allegations Are Not Sufficiently Severe or Pervasive As To Constitute A Hostile Work Environment

Setting aside the allegations described above, Mr. Odeyale's remaining allegations, which do pertain to his race, are insufficient to constitute a hostile work environment under the law.   For example, Plaintiff's Complaint alleges a single incident where Myers used a racial slur, and pushed him causing a physical injury.  Standing alone, this one incident is insufficient to state a claim for a hostile work environment.  *See Ramey v. Potomac Electric Power Co.*, No. Civ. A. 04-2088, 2006 WL 1102836 at *5 (D.D.C. March 31, 2006) ("One incident – though reprehensible if true – does not a hostile work environment make").

Plaintiff attempts to buttress this lone incident with his deposition testimony, which is vague and conclusory.  When asked how many times Mr. Myers called him the n-word during the four days he worked there, Mr. Odeyale responded, "it's frequent times… I don't remember how many times."  SMF at ¶54; Odeyale Dep. 260.  Yet, besides the incident that occurred on October 6, Mr. Odeyale has no specific recollection of when Mr. Myers made such remarks.  For example, he testified that he doesn't remember whether Mr. Myers called him the n-word when he came to fill out the application on September 30.  Nor does he remember whether he was called the n-word on his first day of work.  SMF at ¶ 54; Odeyale Dep. 141.   Nevertheless, according to Mr. Odeyale, Mr. Myers used the n-word "frequently."  *Id.  See Richard v. Bell Atlantic Corp.*, 167 F. Supp. 2d 34, 43 (D.D.C. 2001) (granting summary judgment for employer and noting that "the plaintiff relies solely on her own allegations in pressing her hostile work environment claim.").

Moreover, the substance of Plaintiff's allegations is also insufficient.  Although the use of the n-word, or any racial slur, is highly offensive, it does not automatically establish a hostile work environment.   *See Daso v. Grafton School, Inc.,* 181 F. Supp. 2d 485, 493 (D. Md. 2002)

(granting summary judgment on harassment claim on the grounds that a single incident where supervisor called subordinate "Nigger" was not sufficiently frequent or pervasive to create actionable hostile work environment); *Skipper v. Giant Food, Inc.,* 68 Fed. Appx. 393, 399 (4th Cir. 2003) (no racially hostile work environment where plaintiff exposed to daily racist graffiti, overheard white co-workers using racial slurs thirteen times over four years, and referred to by manager with a racial slur); *Richard v. Bell Atlantic Corp.*, 167 F. Supp. 2d 34, 43 (D.D.C. 2001) (granting summary judgment to employer where plaintiff alleged among other things that she was referred to as the n-word, segregated, denied a personal computer, and excluded from company events).

### 3.    Four Days Of Employment Cannot Be Severe Or Pervasive

Finally, because Plaintiff only worked for ARAMARK for a period of four days, he cannot meet the standard of "severe or pervasive" that is required by law.  Courts have recognized that one factor in the severity and pervasiveness analysis is time.  *Ramey,* 2006 WL 1102836 at *5 (finding that allegations centering on the August 31 – September 1, 2003 time period were insufficient to establish a hostile work environment);  *Francis v. Board of School Commissioners of Baltimore City,* 32 F. Supp. 2d 316 (D. Md. 1999) (granting summary judgment for employer where alleged harassment only lasted 20 days); *see also Akers v. Alvey,* 338 F.3d 491, 499 (6th Cir. 2003) (finding that two week period of harassment was not sufficient to reach the level of "severe or pervasive conduct"); *Conto v. Concord Hosp., Inc.,* 265 F.3d 79, 83 (1st Cir. 2001) (the totality of the circumstances during the four day period preceding plaintiff's discharge could not, as a matter of law have generated a trialworthy issue on a hostile work environment claim).  Indeed, all of the incidents that Plaintiff recalls specifically occurred

on one day - October 6, 2004.  This one day at work cannot be enough to constitute a hostile

work environment.

>**B.    Plaintiff Cannot Establish That His Termination Was**
>         **Discriminatory Because He Has Adduced No Evidence**
>         **That ARAMARK's Actions Were Pretextual**

Plaintiff's Complaint asserts that ARAMARK's conduct constituted unlawful race

discrimination within the meaning of the DCHRA.   To the extent that Mr. Odeyale alleges that

he was terminated because of his race, he has failed to establish that any employment action

taken by ARAMARK was pretextual.  Therefore, ARAMARK is entitled to summary judgment.

>**1.    *McDonnell Douglas* Framework**

This Court employs the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973), to evaluate race discrimination claims in the absence of direct evidence of

discrimination.  *See Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002); *Gustave-Schmidt*, 360

F. Supp. 2d at 113.[3]  In order to establish a *prima facie* case, Plaintiff must show:  "(1) that he is

a member of a protected class; (2) he suffered an adverse employment action; and (3) the

unfavorable action gives rise to an inference of discrimination."  *Id.*

If Plaintiff can demonstrate these criteria by a preponderance of the evidence, then the

burden shifts to ARAMARK to show that it had a legitimate, non-discriminatory reason for his

termination.  *Stella*, 284 F.3d at 144; *Gustave-Schmidt*, 360 F. Supp. 2d at 113.  ARAMARK's

burden is only one of production, and it "need not persuade the court that it was actually

motivated by the proffered reasons."  *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 58 (D.D.C. 2003)

(citation omitted).  If ARAMARK satisfies its burden of production, then "it [effectively] rebuts

the plaintiff's prima facie case, and the presumption of discrimination created by the *prima facie*

---

[3]         The same *McDonnell Douglas* burden-shifting framework that applies to discrimination and retaliation
claims under Title VII also applies to claims under the DCHRA.  *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d
101, 109 (D.D.C. 2002) (DCHRA).

case 'drops out of the picture.'" *Gustave-Schmidt*, 360 F. Supp. 2d at 113 (internal citations

omitted); *Buggs v. Powell*, 293 F. Supp. 2d 135, 140 (D.D.C. 2003). The burden then shifts back

to Mr. Odeyale to show that ARAMARK's stated reason for his termination was pretextual, and

that "the true reason was discriminatory." *Stella*, 284 F.3d at 144; *Gustave-Schmidt*, 360 F.

Supp. 2d at 113. To avoid summary judgment, Mr. Odeyale bears the "burden of showing that a

reasonable jury could conclude that [he] had suffered discrimination." *Gustave-Schmidt*, 360 F.

Supp. 2d at 114 (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en

banc)).[4] For the reasons set forth below, Plaintiff fails to prove that ARAMARK intentionally

discriminated against him with regard to the termination of his employment.

### 2.    Mr. Odeyale Has Failed To Prove A *Prima Facie* Case of Racially Discriminatory Discharge

Plaintiff cannot establish a *prima facie* case of discrimination based on his termination

because he cannot establish an inference of discrimination. "A *prima facie* case requires

evidence adequate to create an inference that an employment decision was based on an illegal

discriminatory criterion." *Teneyck v. Omni Shoreham Hotel,* 254 F. Supp. 2d 17, 22 (D.D.C.

2003), *aff'd,* 365 F.3d 1139, 361 U.S.App.D.C. 214 (D.C. Cir. 2004) (quoting *O'Connor v.

Consol. Coin Caterers Corp.,* 517 U.S. 308, 311 (1996) (internal quotation marks omitted)).

Here, the only evidence that Mr. Odeyale has to show that his employment was even terminated

by ARAMARK is his own testimony to that effect.[5] *Goldberg v. B. Green and Co.,* 836 F. 2d

845, 848 (4th Cir. 1988) (recognizing that plaintiff's "own naked opinion, without more, is not

---

[4]    The Court evaluates "whether the jury could infer discrimination from a combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer)[.]" *Gustave-Schmidt*, 360 F. Supp. 2d at 113; *Aka,* 156 F.3d at 1289.

[5]    Both ARAMARK's records and the testimony of Phil Myers reflect that Mr. Odeyale resigned his employment. *See* Myers Dep. 20-21. However, for purposes of this motion, ARAMARK accepts Mr. Odeyale's allegation that his employment was terminated as true.

enough to establish a prima facie case of …discrimination"). Further, Mr. Odeyale's own testimony on this issue is muddled, at best. The fact that when he was asked whether he believed that Mr. Noble terminated his employment because of race, his response was "I don't know" undermines any attempt to establish an inference of discrimination. SMF at ¶ 58; Odeyale Dep. 179-180.

### 3.    Plaintiff Cannot Establish That Mr. Noble's Decision to Terminate His Employment Was Pretextual

Assuming, as we do for purposes of this motion, that Mr. Odeyale's allegation that Mr. Noble terminated his employment is true, and for the sake of argument, that he could establish a *prima facie* case, Mr. Odeyale has not established that Mr. Noble's stated reasons for Mr. Odeyale's termination were pretext for discrimination. To prevent summary judgment, Mr. Odeyale has the burden to show that ARAMARK's stated reason for his termination is pretextual, and that "the true reason [is] discriminatory." *Stella*, 284 F.3d at 144; *Gustave-Schmidt*, 360 F. Supp. 2d at 113. There is no record evidence that the alleged decision maker, Mike Noble, was motivated by discrimination when he allegedly terminated Mr. Odeyale's employment.

Based on Plaintiff's own testimony, Mr. Noble terminated his employment because of an apparent personality conflict with Phil Myers. Mr. Odeyale testified that he was told, "Phil Myers don't like you, he cannot work with you, so you're terminated." SMF at ¶ 56. As a matter of law, Mr. Noble's stated reasons constitute legitimate, non-discriminatory reasons for terminating Mr. Odeyale's employment. *See Bryant v. Brownlee,* 265 F. Supp. 2d 52, 64 (D.D.C. 2003) ("[i]t goes without saying that plaintiff cannot state a claim with respect to her…supervisors' dislike of her where it is based on factors other than discriminatory animus"); *Selenke v. Medical Imaging of Colorado,* 248 F.3d 1249, 1261 (10th Cir. 2001) (plaintiff's

personality conflicts with other employees furnished a legitimate reason for discharge and did

not constitute pretext for alleged discrimination); *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d

1104, 1108-09 (8th Cir. 1998) (discrimination law does not prohibit employment decisions based

on job performance, erroneous evaluations, personality conflicts or even unsound business

practices); *Barnett v. Department of Veterans Affairs*, 153 F.3d 338, 342-343 (6th Cir. 1998)

(personal dislike is not the same as discriminatory animus); *Cooper v. John D. Brush & Co.,* 242

F. Supp. 2d 261, 270 (W.D.N.Y. 2003) ("At most, plaintiff established that [his supervisor] may

not have liked him, but that is not enough").

        To survive summary judgment, Mr. Odeyale must point to admissible evidence in the

record from which a jury could reasonably infer that Mr. Noble's stated reasons were pretextual

and that his real motivation was discrimination.  At minimum, Plaintiff must produce evidence

from which a factfinder could reasonably either: (1) disbelieve the articulated legitimate reasons;

or (2) believe that an invidious discriminatory reason was more likely than not a motivating or

determinative cause of the employer's actions.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 143 (2000).  Plaintiff has produced no such evidence.

        Mr. Odeyale has failed to adduce any evidence from which a fact-finder could disbelieve

Mr. Noble's stated reasons.  In fact, during the four short days that Mr. Odeyale was employed

by ARAMARK, he admittedly violated the Washington Convention rules regarding forklift use

and had openly disagreed with the judgments of Mr. Myers with respect to the organization of

the storeroom.  Given Plaintiff's lackluster performance during the first four days of his

employment, and his less than cooperative work attitude when asked to reorganize the storage

room, no jury could reasonably conclude that Mr. Noble's alleged decision was discriminatory.

Nevertheless, Plaintiff apparently believes he can show pretext and survive summary judgment based solely on his own testimony.    Yet, when asked whether he believed that Mr. Noble terminated his employment because of race, his response was "I don't know."  SMF ¶ 58; Odeyale Dep. 179-180.  Mr. Odeyale's uncertainty on this fundamental issue underscores a fatal flaw in his case: the utter lack of evidence.  Specifically, there is no evidence that Mr. Noble ever made any comments reflecting discriminatory animus or that he was otherwise motivated by discrimination or retaliation.    Plaintiff testified that he had never heard Mr. Noble make any racial remarks or use racially derogatory language.  SMF at ¶ 58.  Nor is there any evidence that other employees were treated more favorably.  After months of discovery, Plaintiff has neither sought, nor adduced any evidence that similarly situated employees were treated differently. *Mitchell v. National R.R. Passenger Corp.*, 407 F. Supp. 2d 213, 234 (D.D.C. 2005) (granting summary judgment where plaintiff's assertions were not enough to establish that the employer's proffered explanation for her termination was pretext); *Martin v. Healthcare Bus. Res.*, 2002 WL 467749, at *6 (E.D. Pa. Mar. 26, 2002) ("Plaintiff's mere pronouncement or subjective belief that she was terminated because of her race, gender and age is not a substitute for competent evidence."); *Osuala v. Cmty. Coll. of Phila.*, No. 00-98, 2000 WL 1146623 (E.D. Pa. Aug. 15, 2000) (holding that plaintiff failed to demonstrate pretext where she provided nothing more than blanket assertions that discrimination was the reason for her termination).

Plaintiff has not alleged that Mr. Myers was involved in his alleged termination.  For this reason, Plaintiff cannot rely on remarks made by Phil Myers to show pretext.  To be probative, remarks by a non-decision-maker must have some nexus to the adverse employment decision. *Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 12 (D.D.C. 2000).  Regardless, the fact that Mr. Myers hired Plaintiff less than a week before his alleged termination undercuts any

allegation that Mr. Myers had a hand in Mr. Odeyale's termination. The idea that Mr. Myers hired Plaintiff on September 30, 2004, and then orchestrated his termination via Mr. Noble only one week later defies logic. When the same group of management officials who terminated a plaintiff's employment also hired him only a short time before, there is a presumption or inference of non discrimination. *Waterhouse*, 124 F. Supp. 2d at 12 (finding the fact that the same decision-makers hired and fired plaintiff within an eleven-month period to undercut any allegation of discrimination); *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir. 1997) *cert. denied,* 525 U.S. 936 (1998) (affirming summary judgment and noting that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire," especially "when the firing has occurred only a short time after the hiring.")

In sum, Plaintiff cannot survive summary judgment simply by testifying that his employment was terminated, yet offering no other evidence as to why this was pretext for discrimination. Assuming Plaintiff's allegation that he was terminated to be true, Plaintiff has not demonstrated that Mr. Noble was motivated by any sort of discriminatory or retaliatory animus.

### C.    Plaintiff Cannot State a Claim of Retaliation

For the same reasons, this Court should grant summary judgment on Mr. Odeyale's retaliation claims because again, Mr. Odeyale has not produced any evidence, beyond his own self-serving testimony, that Mr. Noble's stated reason for his termination was retaliation for his complaint.

13

1.    **Legal Standard for Retaliation Claims**

To state a *prima facie* case of retaliation, Mr. Odeyale must show that: (1) he engaged in statutorily protected activity; (2) ARAMARK took an adverse personnel action against him; and (3) there is a causal nexus between the Odeyale's engagement in the protected activity and the adverse personnel action. *Tsehaye v. William C. Smith & Co.,* 402 F. Supp. 2d 185, 197 (D.D.C. 2005) (citations omitted). The *McDonnell Douglas* burden-shifting framework applies once Odeyale has made his prima facie case.

2.    **Plaintiff Cannot Establish a *Prima Facie* Case Based Solely On His Own Testimony**

The only evidence that Mr. Odeyale has in support of his allegations that (1) he engaged in protected activity by complaining to Mr. Noble; and (2) that Mr. Noble terminated his employment, is his own bare assertions of those facts. This is insufficient. *Mann v. First Union National Bank*, No. 05-1449, 2006 WL 1676397 at *5 (4th Cir. 2006) (affirming summary judgment where there is no evidence other than plaintiff's bare assertions about employment actions); *Goldberg v. B. Green and Co.,* 836 F. 2d 845, 848 (4th Cir. 1988) (recognizing that plaintiff's "own naked opinion, without more, is not enough to establish a prima facie case of …discrimination"). Mr. Odeyale cannot state a claim of retaliation simply by saying that it is so.

3.    **There Is No Evidence Of Pretext**

Assuming, *arguendo*, that Mr. Odeyale's testimony was sufficient to establish a *prima facie* case of retaliation; Mr. Odeyale has produced no evidence, beyond his subjective beliefs, to show that Mr. Noble's stated reasons for his alleged termination was pretext for retaliation. *See Sullivan v. The Catholic University of America*, 387 F. Supp. 2d 11, 15 (D.D.C. 2005) (granting summary judgment where plaintiff failed to demonstrate that the employer's neutral reason was false); *Carpenter v. Fed. Nat'l Mortgage Ass'n.,* 174 F.3d 231, 236 (D.C. Cir. 1999) (affirming

summary judgment where plaintiff failed to show that employer's reason's were pretextual); *see also Mitchell*, 407 F. Supp. 2d at 234 (D.D.C. 2005) (granting summary judgment where plaintiff's assertions were not enough to establish that the employer's proffered explanation for her termination was pretext); *Osuala,* 2000 WL 1146623 (holding that plaintiff failed to demonstrate pretext where she provided nothing more than blanket assertions that discrimination was the reason for her termination).

V.     **CONCLUSION**

For the foregoing reasons, ARAMARK respectfully requests that the Court grant its Motion for Summary Judgment in its entirety.

Respectfully submitted:

_____/s Katherine J. Emig_____
Grace E. Speights (D.C. Bar No. 392091)
Katherine J. Emig (D.C. Bar No. 496410)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Phone: (202) 739-3000
Fax: (202) 739-3001

*Counsel for Defendant*
*ARAMARK Management Services Limited Partnership*

Dated: March 8, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**SHOLA ODEYALE**

        **Plaintiff,**

        **v.**                          **Civil Action No.  1:05CV02250 RMC**

**ARAMARK MANAGEMENT SERVICES**
**LIMITED PARTNERSHIP,**

        **Defendant.**

## ORDER

      Having considered Defendant ARAMARK's Motion for Summary Judgment, the

Memorandum of Points and Authorities in support thereof, and accompanying exhibits, and the

Opposition and Reply thereto, it is by the Court this ___ day of _____, 2007:

      ORDERED, that the Defendant's Motion for Summary Judgment is hereby GRANTED

in its entirety.


                    _____

                    Rosemary M. Collyer
                    United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I filed electronically and served via U.S mail postage prepaid,

a copy of the foregoing Defendant ARAMARK's Motion for Summary Judgment, Memorandum

of Points and Authorities in Support Thereof, and proposed Order, this 8th day of March 2007,

upon counsel for Plaintiff:

Michael J. Hoare, Esq.
Michael J. Hoare, P.C.
1101 14th Street, N.W., Suite 710
Washington DC 20005

        /s/ Katherine J. Emig
        Katherine J. Emig