# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

SHOLA ODEYALE,                              )
                                            )
            Plaintiff,                      )     Civil Action No. 1:05cv02250 RMC
                                            )
v.                                          )
                                            )
ARAMARK MANAGEMENT SERVICES                 )
LIMITED PARTNERSHIP,                        )
                                            )
            Defendant.                      )
_____   )

## TABLE OF CONTENTS

TABLE OF AUTHORITIES

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PLAINTIFF'S STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.     MR. ODEYALE'S CLAIM OF RACE BASED HARASSMENT . . . . . . . . . . . 2
        B.     MR. ODEYALE'S CLAIM OF UNLAWFUL TERMINATION AND PRETEXT
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.     MR. ODEYALE'S CLAIMS OF RACE-BASED HARASSMENT . . . . . . . . . . 7
               1.     Mr. Myers' Racially Neutral Hostility Directed at Mr. Odeyale . . . . . . . . 7
               2.     The Number and Nature of The Racial Incidents . . . . . . . . . . . . . . . . . 10
               3.     Mr. Odeyale's Tenure With Defendant Was Long Enough to Satisfy the
                      "Severe or Pervasive" Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.     MR. ODEYALE'S RACIAL DISCRIMINATION DISCHARGE CLAIM . . . . 12
               1.     Mr. Odeyale Has Adduced Direct Evidence of Discrimination and Thus
                      Must Survive Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               2.     In the Alternative, the Arguments Advanced by Defendant Do Not Support

i

Summary Judgment Against Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . 14

    a.    Mr. Odeyale's Testimony Is Sufficient To Prove He Was Terminated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    b.    There Is Sufficient Evidence to Prove That Defendant's Stated Reason For Mr. Odeyale's Separation Is A Pretext For Discrimination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    c.    There Is No "Presumption Or Inference Of Non-Discrimination" Favoring Defendant Sufficient To Defeat Plaintiff's Claim. . . . . 17

C.  MR. ODEYALE'S RETALIATION CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    1.    Mr. Odeyale Has Adduced Direct Evidence of Race-Based Retaliation and Thus Must Survive Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . . 18

    2.    In the Alternative, Defendant's Arguments are Without Merit and Cannot Support Summary Judgment Against Plaintiff. . . . . . . . . . . . . . . . . . . . . . 19

        a.    Mr. Odeyale's Testimony Is Sufficient To Prove That He Complained About Discrimination And That He Was Terminated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        b.    There Is Sufficient Evidence To Prove That Defendant's Stated Reason For Mr. Odeyale's Separation Is A Pretext For Retaliation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )  | |
| SHOLA ODEYALE, )  | |
| )  | Civil Action No. 1:05cv02250 RMC |
| Plaintiff, )  | |
| )  | |
| v. )  | |
| )  | |
| ARAMARK MANAGEMENT SERVICES )  | |
| LIMITED PARTNERSHIP, )  | |
| )  | |
| Defendant. )  | |
| _____ )  | |

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bibbs v. Block*, 778 F.2d 1318 (8th Cir. 1985) (en banc)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . 13

*George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Goldberg v. B. Green and Co.*, 836 F.2d. 845 (4th Cir. 1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hall v. Gus Construction Co.,* 842 F.2d 1010 (8th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Johnson v. The United States Capitol Police Board*,
    2005 U.S. Dist. LEXIS 13811 (D.D.C. July 5, 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kelly v. Billington*, 370 F. Supp.2d 151 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Leopold v. Baccarat, Inc.*, 174 F.3d 261 (2d Cir. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McKinney v. Dole*, 765 F.2d 1129 (D.C. Cir. 1985)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mintz v. District of Columbia,* 2006 U.S. Dist. LEXIS 34446 (D.D.C. May 30, 2006)  . . . . . . . 11

*Paz v. Wauconda Healthcare*, 464 F.3d 659 (7th Cir 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iii

*Pegues v. Mineta*, 2006 U.S. Dist. LEXIS 59118 (D.D.C. August 22, 2006) . . . . . . . . . . . . . . 12

*Proud v. Stone*, 945 F.2d 796 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . 16

*Spriggs v. Diamond Auto Glass*, 242 F.3d 179 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Stella v. Mineta*, 284 F.3d 135 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Weldon v. Kraft*, 896 F.2d 793 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*White v. BFI Waste Services, LLC*, 375 F.3d 288 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 11

**DISTRICT CASES**

*Daka v. Breiner*, 711 A.2d 86 (D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Howard University v. Best*, 484 A.2d 958 (D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*Lively v. Flexible Packaging Assoc.*, 830 A.2d 874 (D.C. 2003) (*en banc*) . . . . . . . . . . . . . . . 2

*Ottenberg's Bakers, Inc. v. District of Columbia Commission
    on Human Rights*, 2007 D.C. App. LEXIS 98 (D.C. March 8, 2007) . . . . . . . . . . . . . . 18

**STATUTES**

D.C. Code §§ 2-1401.01 - 1411-06 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
SHOLA ODEYALE,                          )
                                        )
         Plaintiff,                     )    Civil Action No. 1:05cv02250 RMC
                                        )
v.                                      )
                                        )
ARAMARK MANAGEMENT SERVICES             )
LIMITED PARTNERSHIP,                    )
                                        )
         Defendant.                     )
_____ )

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

### I.  INTRODUCTION

Defendant Aramark seeks summary judgment with respect to Plaintiff Odeyale's claims of a race-based hostile work environment and for unlawful termination because of race and retaliation.

Defendant Aramark contends that Mr. Odeyale cannot pursue his racial harassment claim against Aramark for any one of three reasons: (1) some of the ugly incidents Mr. Odeyale experienced were race neutral and cannot be considered in defining his work environment as hostile; (2) Mr. Odeyale did not experience the requisite number of ugly racial incidents sufficient to render his workplace a hostile work environment; and (3) Mr. Odeyale lasted four days in Defendant's workforce, a term Defendant asserts cannot constitute "severe or pervasive" harassment as a matter of law.

Defendant Aramark contends that Plaintiff Odeyale cannot pursue his claims of unlawful

1

discharge because, according to Defendant, Mr. Odeyale relies only on his own testimony that he

was terminated and cannot prove that Defendant's stated reason for the termination is pretext for

unlawful discrimination or retaliation.

Defendant's issues are discussed below.  Defendant's motion should be denied.

## II.  PLAINTIFF'S STATEMENT OF FACTS

Defendant is not entitled to summary judgment on any issue in this matter because

genuine issues of material fact remain which require submission to, and resolution by, a jury.

Defendant's arguments in favor of summary judgment must all fail.

The following evidence is sufficient to raise the requisite inference necessitating

submission of the case to a jury.

## A.    MR. ODEYALE'S CLAIM OF RACE BASED HARASSMENT[1]

1.    Plaintiff Shola Odeyale is a "Black" person.  (Def.'s "People Information Form,"

Pl.s. Ex. 6)[2] and a Nigerian Born United States citizen.  (Complaint and Answer, ¶ 6).

2.    Mr. Odeyale started work with Defendant on October 1, 2004.  He worked for

---

[1]    The District of Columbia's Human Rights Act (presently codified at D.C. Code §§ 2-1401.01 - 1411-06) was interpreted in *Howard University v. Best*, 484 A.2d 958, 978 (D.C. 1984) to apply to that form of discrimination referred to as harassment.  According to the Court in *Best*, a plaintiff makes out a *prima facie* case of unlawful harassment with proof that (1) plaintiff was subjected to unwelcome verbal or other conduct of an unlawful nature, (2) the conduct was directed at plaintiff because of his protected status and (3) the harassment affected a term, condition or privilege of Plaintiff's employment, (*id*.  At 978), meaning the harassment "must be sufficiently severe as to alter the condition of employment and create an abusive work environment" (*id*. at 979-80) and (4) that the defendant is legally responsible for the wrongdoing. This formulation of plaintiff's burden was reaffirmed in *Lively v.  Flexible Packaging Assoc.*, 830 A.2d 874, 876 (D.C. 2003) (*en banc*) and *Daka v.  Breiner*, 711 A.2d 86, 92 (D.C. 1998).

[2]    Because the exhibits are numbered in consecutive order starting in Plaintiff's Response to Defendant's Statement of Material Facts, exhibit numbers may not appear in consecutive order in this opposition.

four days: Friday, October 1; Saturday, October 2; Tuesday, October 5; and Wednesday, October

6.  (Def.'s Statement of Material Fact No. 23 and Pl.'s Response).

      3.      Plaintiff was supervised by Defendant's District manager, Phil Myers.  (Odeyale

Depos., Pl.'s Ex. 1, at 50/8-9).

      4.      Mr. Myers "frequently" referred to Mr. Odeyale as a "n----r".  (*Id*. at 141).

      5.      Mr. Myers taunted Mr. Odeyale with the racial slur "n----r," trying to get Mr.

Odeyale to say the "N" word.  (*See* Def.'s Statement of Material Fact, Nos. 51 and  52 and Pl.'s

Response).  Mr. Myers would point to the letter "N" on boxes and rhetorically ask Mr. Odeyale

to tell him what the "N" word represented, telling him that in America the "[l]etter N stands for

N----r, man, N----r, its n----r," (Odeyale Depos., Pl.'s Ex. 1, at 181/1-13), causing Mr. Odeyale to

cry (*id*. at 181/15) and tried to get him to repeat the slur.  (*Id*. at 181/14-17).

      6.      Mr. Myers initiated a physical altercation with Mr. Odeyale that caused him to fall

to the ground from a ladder and injure his head and back.  During the altercation, Mr. Myers

called Mr. Odeyale a "N----r" (Def.'s Statement of Material Fact, No.  47 and Pl.'s Response).

The incident caused Mr. Odeyale to seek medical attention for depression, headache and back

pain.  (Odeyale Depos., Pl.'s Ex. 1, at 143/8-18).

      7.      Mr. Odeyale was overheard by one of the Convention Center's security guards

calling Mr. Odeyale a "N----r."  (Def.'s Statement of Material Fact,  No.  53 and Pl.'s Response).

      8.      Mr. Odeyale was supposed to be supervising people but instead was "confined [by

Myers]. . . into the storage room" (Odeyale Depos., Pl.'s Ex. 1, at 177/12-14) doing heavy work

because Mr. Myers told him to do it.  (*See* Def.'s Statement of Material Fact No. 21 and Pl.'s

Response).  Mr. Myers assigned Mr. Odeyale to the storage room where he was expected to

move sandbags, winter salt, chemicals and other "heavy stuff." (*See* Def.'s Statement of Material Fact, No. 21 and Pl.'s Response).[3]

9.      Mr. Myers referred to Mr. Odeyale using offensive language such as "asshole" and "African chicken." (*See* Def.'s Statement of Material Fact, No. 52 and Pl.'s Response).

10.     Mr. Myers refused to allow Mr. Odeyale to take breaks when they were necessary for him to eat food and take medication for his diabetes. (*See* Def.'s Statement of Material Fact, No. 52 and Pl.'s Response).

11.     Mr. Myers ridiculed Mr. Odeyale as a registered voter and as a member of the Democratic party. (*See* Def.'s Statement of Material Fact, No. 52 and Pl.'s Response).

12.     Mr. Odeyale experienced physical pain as a result of the altercation initiated by Mr. Myers. (Def.'s Statement of Material Fact, No. 49 and Pl.'s Response). Mr. Myers' other race-based misconduct caused Mr. Odeyale distress and made him cry. (Def.'s Statement of Material Fact, No. 52 and Pl.'s Response).

13.     Mr. Myers served as Defendant's District Manager. (Myers Depos., Pl.'s Ex. 5, at 14/6-17) and was above all others on Defendant's Organizational Chart. (Def.'s Ex. G). He was "totally responsible for the [Defendant's] start-up business [at the Washington Convention Center]. (Myers Depos., Pl.'s Ex. 5, at 14/6-17).

14.     Mr. Odeyale complained to Mr. Michael Noble, Defendant's Resident Manager (and Mr. Myers' subordinate employee) regarding the abuse he experienced with Mr. Myers and was terminated because, according to Mr. Noble, "Phil Myers doesn't like you, he cannot work

_____

        [3]     In the context of race-based harassment, it is for the jury to determine whether Defendant's seemingly racially neutral conduct was racially motivated. (*See infra* at Section III.A.1).

4

with you, so you're terminated." (Odeyale Depos., Pl.'s Ex.1, at 130).

15. Defendant relies on Mr. Myers' testimony to the effect that Mr. Odeyale was <u>not</u> terminated but, instead, resigned from his employment with Aramark in a meeting where he and Mr. Noble were present and Mr. Noble said nothing. (Def.'s Statement of Material Fact, No. 55 and Pl.'s Response).

**B.    MR. ODEYALE'S CLAIM OF UNLAWFUL TERMINATION AND PRETEXT[4]**

16. Mr. Odeyale obtained his employment with Defendant Aramark when his prior employer, Washington Convention Center Authority (WCCA) outsourced the jobs in its Building Services Department. (Complaint and Answer, ¶ 5).

17. The Convention Center implemented the outsourcing by contracting with Aramark in 2004 to perform the Housekeeping/Janitorial functions that had previously been performed by the Convention Center's in-house workforce, including Mr. Odeyale. (*Id*.)

Because of the circumstances referenced above, Aramark was

> required to afford displaced employees of the Authority the protections of the Privatization Procurement and Contract Procedures Act of 1933, D.C. Law 10-79, D.C. Code § 2-305b. Those protections are: that Contractor shall offer each displaced employee right of first refusal in a comparable available position for which the employee is qualified for at least a six-month period during which the employee shall not be discharged except for cause; and that Contractor shall, at the end of six months, offer the employee continued employment if the employee's performance is

---

[4]    Defendant cites *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002), to illustrate plaintiff's burden in a race case to prove (1) status in a protected class; (2) an adverse action and (3) an inference of discrimination. (Def.'s Memo, p. 8). To prove the *prima facie* case of retaliation, plaintiff must show (1) he complained of unlawful discrimination, (2) an adverse action and (3) a causal connection between the protected activity and the adverse action (Def.'s Memo, p. 14). When defendant offers a stated reason for the challenged conduct, plaintiff must show the reason stated is pretext for unlawful conduct.

satisfactory.

(Complaint and Answer, ¶ 5).

18.    Mr. Odeyale was employed by WCCA as a Building Services Supervisor during the period April 2001 - September 30, 2004.  (Def.'s Statement of Material Fact No. 12 and Pl.'s Response).

19.    Mr. Odeyale worked for the WCCA as a supervisor monitoring and supervising subordinate employees performing Housekeeping functions.  (Def.'s Statement of Material Fact No. 21 and Pl.'s Response).

20.    Defendant concedes that Mr. Odeyale had a superlative reputation as a manager and supervisor with the WCCA.  (Def.'s Statement of Material Fact, Nos. 16 and 17 and Pl.'s Response).

21.    Plaintiff had never been disciplined while working for the WCCA.  (Odeyale Depos., Pl.'s Ex.1, at 29/14-16).

22.    Defendant was required to provide Mr. Odeyale employment comparable to that which he had held with the WCCA.  (Def.'s Statement of Material Fact No. 17 and Pl.'s Response).

23.    Mr. Odeyale complained to Mr. Michael Noble, Defendant's Resident Manager (and Mr. Myers' subordinate employee), regarding Mr. Myers' abuse and was terminated because, according to Mr. Noble, "Phil Myers doesn't like you, he cannot work with you, so you're terminated."  (Odeyale Depos., Pl.'s Ex. 1, at 130).

24.    Mr. Myers testified to the effect that Mr. Odeyale resigned from his employment with Aramark in a meeting where he was present with Mr. Odeyale and Mr. Noble and Mr.

Noble said nothing.  (Def.'s Statement of Material Fact No. 55 and Pl.'s Response).

25.    Mr. Myers testified that Mr. Noble attended the meeting with Mr. Odeyale as a witness.  (Odeyale Depos., Pl.'s Ex. 1, at 22/8-23/5).

26.    Mr. Myers created a letter, ostensibly for Mr. Noble's signature, attesting to the last meeting with Mr. Odeyale and his "resignation," and cannot explain why he did that.  (Myers Depos., Pl.'s Ex. 5, at  89/15-91/18).

### III.  DISCUSSION

Defendant is not entitled to summary judgment because genuine issues of material fact remain which require resolution by a jury.  As discussed below, Defendant's argument in favor of summary judgment must all fail.

### A.    MR. ODEYALE'S CLAIMS OF RACE-BASED HARASSMENT

Defendant contends that Mr. Odeyale cannot pursue a racial harassment claim against Aramark for any one of three reasons: (1) Some of the ugly incidents Mr. Odeyale experienced were race neutral; (2) Mr. Odeyale did not experience a sufficient number of ugly racial incidents to render his workplace a hostile work environment; and (3) Mr. Odeyale lasted four days in Defendant's workforce, a term Defendant asserts cannot constitute "severe or pervasive as a matter of law." (Def.'s Mem. at 4-8).

#### 1.    Mr. Myers' Racially Neutral Hostility Directed at Mr. Odeyale

Defendant asserts that certain of Mr. Myers' abuse directed at Mr. Odeyale was "unrelated to race" and therefore cannot be used by Mr. Odeyale to support  his claim of race based harassment.  (Def.'s Memo at p. 5).

Defendant's argument targets specific incidents of Mr. Myers' misconduct including his

refusal to allow Mr. Odeyale to take breaks to accommodate his need for medicine, (*id*.) and calling Mr. Odeyale names such as "asshole," "dummy," etc. (*Id*.). Defendant concedes as it must (because it has not challenged Plaintiff's evidence) that these events occurred. Defendant opines that these so-called neutral events "bear no relationship to his race." (*Id*.).

Defendant offers no factual predicate for its argument that Mr. Myers' so-called race-neutral incidents were, in fact, motivated by non-racial considerations. Defendant argues, instead, as a matter of law, that Mr. Myers' refusal to allow Mr. Odeyale a break to take his medications for diabetes as a matter of law cannot be used to support a claim of race-based harassment.

Plaintiff respectfully submits, to the contrary, that this Court is not in a position to make the determination Defendant seeks as it lacks the requisite factual predicate. It was Defendant's burden on this motion to produce that predicate and it has not done so. There is no showing that Mr. Myers' conduct in refusing to allow Mr. Odeyale a break to take his medication was not race-based conduct or that his actions in humiliating and insulting Plaintiff were not the product of his racial animus toward Mr. Odeyale. Given that Mr. Myers engaged in some quite ugly race-based misconduct, a reasonable jury could conclude that these other seemingly non-racial incidents were also race-based.

Defendant relies upon *Kelly v. Billington*, 370 F. Supp.2d 151 (D.D.C. 2005), for the proposition that a hostile work environment must be the result of conduct based on the Plaintiff's protected status (Def.'s Memo, p. 5). Plaintiff does not quarrel with Defendant's proposition. Defendant's case, however, has no relevance to Mr. Odeyale's case. The plaintiffs in *Kelly v. Billington* alleged co-worker race-based harassment but could prove no commonality among the

incidents.  Some of the harassment was anonymous; some occurred outside the plaintiffs'

presence; other incidents were demonstratively racially neutral.  The Court found as fact that:

> The sum total of the allegations reveals that: (1) many of the
> alleged incidents were not related to plaintiffs' protected status and
> therefore were not racial harassment; (2) most of the comments
> were not directed at plaintiffs; (3) the comments were infrequent;
> (4) plaintiffs' supervisors were not involved in any of the alleged
> harassment; and (5) plaintiffs were never threatened by the
> harassment.

370 F. Supp at 157-58.

The conclusion  in *Kelly v. Billington* does not predetermine the outcome in Mr.

Odeyale's case.  It remains true that, with the appropriate predicate, conduct that is ostensibly

neutral can serve as the predicate for an unlawful harassment claim.  In *McKinney v. Dole*, 765

F.2d 1129 (D.C. Cir. 1985), for example, the court held that the "harassment or other unequal

treatment of an employee" need not take the form of sex-based advances or other incidents with

clearly sexual overtures to be illegal under Title VII.  (*Id*. at 1138).  The *McKinney* Court ruled

that the trial court erred when it dismissed Plaintiff's claim declining to treat a physical assault

on plaintiff by her supervisor as sex-based misconduct simply because the incident did not

include any attempt to obtain or to coerce plaintiff to engage in any form of sexual activities.

The reversal in *McKinney* was accompanied by two propositions relevant here.  First, it was the

Defendant employer's obligation on summary judgment to demonstrate that the challenged

conduct was motivated by some consideration other than the protected status.  (*Id*.).  Second, to

be illegal under Title VII, it is enough if the "harassment or other unequal treatment of an

employee . . . would not occur but for the [protected status] of the employee . . ." (*Id*. at 1139).

This second proposition is a matter for the jury to decide.  *See Hall v. Gus Construction Co.,* 842

9

F.2d 1010 (8th Cir. 1988) (incidents of harassment that would not have occurred but for the

Plaintiff's protected status can serve as the predicate for a claim of harassment).

### 2. The Number and Nature of The Racial Incidents

Defendant asserts that Mr. Odeyale did not experience a sufficient number of substantive

racial incidents to satisfy the notion of a hostile work environment.

#### (a)

The District of Columbia's Human Rights Act, (hereinafter the "DCHRA"), presently

codified as § 2-1401.1 - 1411.06, was interpreted in *Howard University v. Best*, 484 A.2d 958,

978 (D.C. 1984) to prohibit harassment based on Plaintiff's protected status.  According to the

court in *Best* "[n]o specific number of incidents, and no specific level of egregiousness" need be

proved, and instead the trier of fact "should consider [ ] the amount and nature of the conduct, the

plaintiff's response to such conduct, and the relationship between the harassing party and the

plaintiff." *Best*, 484 A.2d at 981.  The "totality of the circumstances" must be considered.  *Id.*

#### (b)

Mr. Odeyale testified at deposition that Mr. Myers "frequently" referred to him as a "N---

-r," ridiculed him as a black person, tried to get him to use the "N----r" word, and physically

assaulted him while calling him a "N----r."  (*See* Def.'s Statement of Material Facts Nos.  49-51

and Pl.'s Responses).

Significant, for present purposes, is Mr. Myers' repeated use of the term "N----r."  The

stinging significance of this racial slur was aptly characterized by the Fourth Circuit in *Spriggs v.

Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001):

> Far more than a "mere offensive utterance," the word "nigger" is

10

pure anathema to African-Americans.  "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *Rogers v. Western-Southern Life Ins. Co.,* 12 F.3d 668, 675 (7th Cir. 1993) (citation and internal quotation marks omitted).

Judge Oberdorfer in *Mintz v. District of Columbia,* 2006 U.S. Dist. LEXIS 34446, at *8-9 (D.D.C. May 30, 2006) commented to the same effect:

> . . . the remarks in this case are particularly egregious.  Indeed, other courts have found the use of the "nigger" to be so offensive that it need not happen often to create a hostile work environment.  See *Walker v. Thompson,* 214 F.3d 794, 615, 626 (5th Cir. 2000) (handful of racially disparaging remarks including use of the word "nigger" sufficient to establish question of fact regarding hostile work environment); see also *Swenson v.  Potomac*, 270 F.3d 794, 817 (9th Cir. 2001) (upholding $ 1 million punitive damages award when plaintiff was subject to a stream of jokes, including "nigger" jokes, when "nigger" was "perhaps the most offensive and inflammatory racial slur in English . . . a word expressive of racial hatred and bigotry.") (internal quotation marks and citation omitted).

In Mr. Odeyale's case, the intense insult generated by Mr. Myers ugly language was compounded by Mr. Myers'  physical assault of Mr. Odeyale while calling him a "N----r.".  This combination of insult and physical violence can even more dramatically alter the work environment.  *Mintz*, *supra*, at *9; *White v. BFI Waste Services, LLC*, 375 F.3d 288, 298 (4th Cir. 2004) ("the presence of race based physical threats undeniably strengthens a hostile environment claim")  "[E]ven a single incident of. . .  assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2d Cir. 1995).

11

(c)

Whether Mr. Odeyale's experience was sufficient to constitute a hostile work environment within the meaning of the applicable statute, here the DCHRA, is ordinarily a question for the jury to decide. *Pegues v. Mineta*, 2006 U.S. Dist. LEXIS 59118 (D.D.C. August 22, 2006); *see George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005). This case resents no exception to that rule.

### 3. Mr. Odeyale's Tenure With Defendant Was Long Enough to Satisfy the "Severe or Pervasive" Standard.

Defendant asserts that Mr. Odeyale stayed with Aramark for a period of four days and therefore, as a matter of law, he cannot meet the standard of "severe or pervasive." (Def.'s Memo, p. 7).

Defendant's proposed bright-line rule on its face is irrational and cannot be reconciled with the established jurisprudence regarding unlawful harassment in the workplace. What happened during the Plaintiff's tenure must be taken into account. Otherwise, devious employers would hire certain people for two to three day periods, abuse them at will and be immune from liability or accountability. In the instant case, Mr. Odeyale experienced multiple instances of overt racial harassment which culminated in a physical attack when Mr. Myers, on October 6, 2004 caused Mr. Odeyale to fall to the floor, injuring his head and back, and requiring medical attention. Whether Mr. Odeyale's workplace was "severe or pervasive" should be heard and decided by a jury.

### B. MR. ODEYALE'S RACIAL DISCRIMINATION DISCHARGE CLAIM

Defendant contends that Mr. Odeyale cannot pursue his race discrimination discharge

12

claim because (1) "[T]he only evidence that Mr. Odeyale has to show that his employment was

even terminated by Aramark is his own testimony to that effect" (*id*. p. 9), (2) there is no

evidence that Defendant's stated reason for Mr. Odeyale's termination is a pretext for

discrimination, (*id*. at p. 10 and 13); and (3) (according to Defendant) there is a "presumption or

inference of non-discrimination" favoring Defendant arising from the fact that Mr. Myers

allegedly hired Plaintiff less than a week before he "orchestrated his termination via Mr. Noble"

(*id*. at p. 12-13).

1.    **Mr. Odeyale Has Adduced Direct Evidence of Discrimination and Thus Must Survive Summary Judgment.**

Mr. Odeyale's evidence is to the effect that Mr. Noble expressly stated to him that he

(Mr. Odeyale) was being terminated because "Phil Myers don't like you, he cannot not work with

you, so you're terminated." *See* Def.'s Statement of Material Facts No. 56. Coupled with the

evidence of Mr. Myers' liberal use of a racial epithet to describe Mr. Odeyale, and Mr. Noble's

knowledge of Mr. Myers' habit, this statement constitutes direct evidence that Mr. Odeyale was

terminated because of his race. *See, e.g.*, *Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515,

1521-22 (11th Cir. 1986) (comments by school board member that he did not want to see school

system "nigger-rigged" was direct evidence of intentional racial discrimination); *Bibbs v. Block*,

778 F.2d 1318 (8th Cir. 1985) (en banc) (where a selection committee member characterized

plaintiff as a "black militant" and referred to another black employee as "boy" and "nigger," this

constituted direct evidence of discrimination).

Here, the evidence supports the conclusion that the reason Mr. Myers "don't like" Mr.

Odeyale, and the reason he "cannot work with" Mr. Odeyale, is because Mr. Odeyale is black.

13

Mr. Noble, knowing this, terminated Mr. Odeyale anyway, based directly upon Mr. Myers' clear bias. This is therefore direct evidence that race was a motivating factor in terminating Mr. Odeyale's employment. This evidence alone is sufficient for Plaintiff to survive summary judgment.

   **2.    In the Alternative, the Arguments Advanced by Defendant Do Not Support Summary Judgment Against Plaintiff.**

   **a.    Mr. Odeyale's Testimony Is Sufficient To Prove He Was Terminated.**

Defendant asserts that Mr. Odeyale's testimony alone is insufficient to prove that he was terminated by Defendant and cites for that proposition the case of *Goldberg v. B. Green and Co.*, 836 F.2d. 845, 848 (4th Cir. 1988). Defendant's authority is of no assistance to its position as the *Goldberg* case did not address a plaintiff's capacity to testify regarding *facts* in dispute, but, instead, addressed a situation where plaintiff tried to avoid summary judgment with a "*naked opinion*" of the defendant employer's motive or state of mind. Because Plaintiff Goldberg's testimony was not sufficient evidence of Defendant's motive or state of mind it could not be used to support a *prima facie* case of discrimination. Mr. Odeyale's evidence is different. He does not offer more than his opinion of the Defendant's motive or state of mind, he is testifying to *fact* and particularly, a conversation he had with Defendant's District Manager, Mike Noble, regarding the conclusion of his employment with Aramark. (*See* Def.'s Statement of Material Fact Nos. 55 and 56 and Pl.'s Responses).

Contrary to Defendant's negative assertion regarding Mr. Odeyale's capacity to testify in support of his case, "[t]here is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary

14

judgment motion." *Johnson v. The United States Capitol Police Board*, 2005 U.S. Dist. LEXIS 13811 (D.D.C. July 5, 2005) at *27-28; *Paz v. Wauconda Healthcare*, 464 F.3d 659, 664-65 (7th Cir 2006) (quoting *Weldon v. Kraft*, 896 F.2d 793, 800 (3d Cir. 1990)). Plaintiff's testimony, if deemed credible by a jury, is all that is needed to establish the material elements of his claim. *See, e.g.*, *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 269-71 (2d Cir. 1999) (judgment as a matter of law in defendant's favor on Plaintiff's claim for sexual harassment reversed notwithstanding plaintiff's "evidence of hostile work environment consisted entirely of her own testimony").

If Plaintiff testifies about the substance of his conversation with Mr. Noble, and the jury credits his testimony, the fact determined will permit the fact finder, and the Court, to reach the conclusion that he was terminated.

> **b.    There Is Sufficient Evidence to Prove That Defendant's Stated Reason For Mr. Odeyale's Separation Is A Pretext For Discrimination.**

Defendant contends that there is "no record evidence that the alleged decision maker, Mike Noble, was motivated by discrimination when he allegedly terminated Mr. Odeyale's employment" (Def.'s Memo, p. 10). Mr. Odeyale's deposition testimony is to the effect that he met with Mr. Noble on October 7, 2004 and Mr. Noble told him, in essence, that "Mr. Myers doesn't like you, he cannot work with you, so you're terminated." (Def.'s Statement of Material Fact Nos. 55-56 and Pl.'s Responses). Defendant's contention notwithstanding, there is ample evidence of Defendant's pretext for discrimination.

Defendant concedes for purposes of its motion for summary judgment that Mr. Odeyale was terminated. (Def.'s Memo, p. 9 n.5). Defendant's evidence, including the testimony of its principal witness, Phil Myers, however, is to the effect that Mr. Odeyale was not terminated, but

resigned his employment. (Myers Depos., Pl.'s Ex. 5, at 1717-18/22). Defendant's contention is

explicit also in what purports to be a letter addressed to Mr. Odeyale and signed by Michael

Noble, wherein is stated as follows: "In follow up to our meeting on Friday, October 8, 2004,

you expressed your intent to resign your position with Aramark effective immediately." (Pl.'s

Ex. 7). The problem for Defendant is that although the letter purports to be signed by Michael

Noble as "Resident General Manager, D.C. Convention Center," Mr. Myers at deposition

admitted that he (Mr. Myers) typed the letter for his subordinate employee and provided it to

Mike Noble who, Mr. Myers said, would have signed it. (Myers Depos., Pl.'s Ex. 5, at 89/15-18).

Mr. Myers has absolutely no explanation for why he typed this letter and did not include

his own name. (*Id*. at 91/9-18).

Mr. Myers testified also that he and Mr. Noble were together at the meeting with Mr.

Odeyale when he last visited Aramark, and that Mr. Noble made absolutely non contribution –

"none whatsoever" (*id*. at 22/18-20). According to Mr. Myers, Mr. Noble was "primarily there

as a witness." (*Id*. at 23/3-4).

A jury could reasonably find that Defendant fabricated a story to cover up Mr. Odeyale's

termination wherein Mr. Odeyale quit his job and concocted too a writing ostensibly signed by

Mr. Noble, to support that story. If a jury believed Mr. Odeyale that he was terminated by Mr.

Noble because of Mr. Myers' animus towards him, the same jury could find that Mr. Myers'

conduct in offering false testimony and documents is a cover up for his discriminatory motive for

Mr. Odeyale's discharge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

Defendant argues that Mr. Odeyale cannot survive summary judgment because he was

terminated by Mr. Noble, not Mr. Myers, and there is no evidence that Mr. Noble "alleged

16

decision was discriminatory." (Def.'s Memo, p. 11). Defendant's argument, of course, directly contradicts Mr. Myers' deposition that he was in attendance at the meeting involving Mr. Odeyale and Mr. Noble, that Mr. Noble said nothing, and Mr. Odeyale was not terminated and, instead, quit. (Myers Depos, Pl.'s Ex. 5, at 22-23). That contradiction by itself raises a submissible issue. It is also important to note that when Mr. Noble terminated Mr. Odeyale, he did so because of Mr. Myers' dislike for Mr. Odeyale, a conclusion that the jury could reasonably determine Mr. Noble arrived at after discussions with Mr. Myers.

### c.    There Is No "Presumption Or Inference Of Non-Discrimination" Favoring Defendant Sufficient To Defeat Plaintiff's Claim.

Defendant contends that because Mr. Myers "hired" Plaintiff on September 30, 2004 and then orchestrated his termination via Mr. Noble only one week later, it defies logic and runs afoul of the "presumption or inference of nondiscrimination" to attribute to him a discriminatory motive. (Def.'s Memo. at.12-13).

There are several problems with Defendant's attempt to invoke the "same actor" doctrine. Initially it must be noted the "same actor" doctrine, where it is applicable, generates only an inference, *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991), and not a presumption as suggested by Defendant. (Def.'s Memo. at 13). In addition, the "same actor" doctrine would seem to apply only when there is an actual "hire" decision in which the hiring official participates freely and without coercion. In Mr. Odeyale's situation, Mr. Myers had no choice about whether or not to hire Mr. Odeyale. He was required to provide employment to Mr. Odeyale by virtue of local law when Aramark agreed to provide services to the Convention Center and to accommodate its former workforce. (Def.'s Statement of Material Fact No. 17 and Pl.'s Response). Whether Mr.

17

Myers both hired and/or fired Plaintiff are questions of fact for the jury to decide.  Moreover, the inference the Defendant asserts is "only a permissible one, the fact finder [is] not required to accept . . ."  *Ottenberg's Bakers, Inc.  v. District of Columbia Commission on Human Rights*, 2007 D.C. App.  LEXIS 98 (D.C. March 8, 2007), at *17.

## C.  MR. ODEYALE'S RETALIATION CLAIM

Defendant contends that Mr. Odeyale cannot pursue his claim of retaliation against Aramark because (1) he has only his own testimony to show that he complained to Mr. Noble regarding Mr. Myers' discrimination and that he was terminated, and  (2) there is no evidence of pretext.

### 1.    Mr. Odeyale Has Adduced Direct Evidence of Race-Based Retaliation and Thus Must Survive Summary Judgment.

As previously discussed *supra* at Section III.B.1 (which arguments Plaintiff incorporates herein), Plaintiff's evidence that Mr. Noble terminated him because he could not get along with Mr. Myers, coupled with the evidence that Mr. Myers could not get along with Mr. Odeyale because of his race, constitutes direct evidence.  Here, Plaintiff's evidence demonstrates that, upon Mr. Odeyale's complaint to Mr. Noble of Mr. Myers' unlawful conduct, Mr. Noble responded by terminating Mr. Odeyale, thereby condoning and ratifying Mr. Myers' conduct.  Such a response can clearly be deemed retaliatory and Plaintiff is entitled to survive summary judgment based upon this evidence.

18

2.   **In the Alternative, Defendant's Arguments are Without Merit and Cannot Support Summary Judgment Against Plaintiff.**

   a.   **Mr. Odeyale's Testimony Is Sufficient To Prove That He Complained About Discrimination And That He Was Terminated.**

The legal sufficiency of Mr. Odeyale's testimony regarding the facts of his case (as opposed to his opinions) is discussed above in Section III.B.1.  The points and authorities cited therein in support the adequacy of Mr. Odeyale's testimony apply with equal force here and are incorporated by reference.

   b.   **There Is Sufficient Evidence To Prove That Defendant's Stated Reason For Mr. Odeyale's Separation Is A Pretext For Retaliation.**

The discussion set out above in Section III.B.2 regarding pretext as it relates to the difference between Mr. Odeyale's evidence to the effect that he complained about Mr. Myers' discrimination and was fired and Defendant's contention that he resigned, suggests that the employer is dissembling.  When considered in the context of Mr. Myers' admission that he engineered Mr. Noble's correspondence regarding the faux resignation and Mr. Myers' explicit racial animus toward Mr. Odeyale, the requirement of pretext is fully satisfied.  A reasonable jury could find that the foregoing is a pretext for retaliation.

## IV.  CONCLUSION

For the reasons stated herein and in Plaintiff's Response to Defendant's Statement of Material Facts to Which there is no Genuine Issue, Plaintiff requests that the Court deny Defendant's motion for summary judgment.  A proposed Order is attached.

Respectfully submitted,

_____/s/ _____
Michael J. Hoare [D.C. Bar No. 206979]
Michael J. Hoare, P.C.
1101 14th Street, NW, Suite 710
Washington, DC 20005
202.408.7901
202.408.7903 (fax)
Attorney for Plaintiff

20