IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHOLA ODEYALE<br><br>**Plaintiff,**<br><br>v.<br><br>**ARAMARK MANAGEMENT SERVICES LIMITED PARTNERSHIP,**<br><br>**Defendant.** | Civil Action No.  1:05CV02250 RMC |

**REPLY IN FURTHER SUPPORT OF DEFENDANT
ARAMARK'S MOTION FOR SUMMARY JUDGMENT**

Defendant ARAMARK Management Services Limited Partnership ("ARAMARK" or "Defendant"), by and through its undersigned counsel, respectfully submits this Reply in further support of its Motion for Summary Judgment, and in support thereof states as follows:

I. **INTRODUCTION**

Plaintiff's Opposition Brief ("Opp. Mem.") fails to overcome Plaintiff's glaring lack of evidence to support his claims that ARAMARK highlighted in its initial memorandum of law. Instead, Plaintiff focuses on the severity of the incidents Plaintiff alleged to have experienced during the four days that he was employed by ARAMARK, based solely on his own deposition testimony regarding these incidents. In doing so, Plaintiff neglects to establish evidence sufficient to survive summary judgment on his termination claim. Plaintiff utterly failed to establish either direct evidence of discrimination or retaliation or to show that ARAMARK's stated reason for his termination was pretext.

Plaintiff has not presented the Court with any factual or legal basis to overcome summary judgment. As set forth below, Plaintiff does not have sufficient evidence to establish a legitimate

factual dispute upon which to proceed to trial. Therefore, summary judgment for ARAMARK should be granted.

## II.     ARGUMENT

**A.     Defendant ARAMARK's Reply to Plaintiff's Responses to the Statement of Material Facts As To Which There Is No Genuine Issue**

Plaintiff's attempt to challenge many of the material facts set forth in Defendant's Statement of Material Facts ("SMF") is deficient. Although each factual assertion is addressed individually below, as a general matter, Plaintiff frequently objected to Defendant's assertions as either incomplete, misleading, or both. Plaintiff then cited additional testimony that simply elaborates on Defendant's assertions or provides additional information, without contradicting them, or establishing a genuine dispute of a material fact.

   1-16:   No dispute.

   17.   There is no genuine dispute of material fact. The distinction between whether Plaintiff was asked to come to the Convention Center to apply for a position as opposed to whether Plaintiff was asked to come to the Convention Center and given a job application, which he then completed, is immaterial. Plaintiff's additional assertions in ¶ 17 are immaterial and do not contradict Defendant's assertions.

   18.   There is no genuine dispute of material fact. Although Plaintiff disputes this as misleading, the additional facts proffered in Plaintiff's Response ¶ 17 do not dispute Defendant's assertion in ¶ 18.

   19.   No dispute.

   20.   There is no dispute of material fact. Whether the Operations Manager is more senior to the Housekeeping Supervisor position is immaterial.

21.     There is no dispute of material fact.  Whether Mr. Odeyale was "hired" within the meaning of the Privatization Procurement and Contract Procedures Act of 1993 constitutes a legal conclusion.   With respect to the second sentence of ¶ 21, Plaintiff does not dispute Mr. Myers' testimony about what Myers told Plaintiff he would be doing in his position for ARAMARK.  Plaintiff simply provides additional testimony about what Mr. Odeyale actually did during his four days of employment, which does not create a dispute with ARAMARK's assertion in ¶21.

22.     There is no dispute of material fact.  Plaintiff's response does not dispute Mr. Myers' intention to have Odeyale fill the Relief Supervisor role.  Plaintiff's response simply asserts the additional fact that he worked in the storage room during the four days of his employment, a fact which is not in dispute.  *See* SMF at ¶ 25.  Moreover, to the extent there is a dispute over whether Mr. Odeyale would be assigned permanently to the store-room, it is immaterial.

23.     No dispute.

24.     There is no genuine dispute of material fact.  Defendant does not dispute that the storage room also contained heavy materials such as snow salt, sand, and the like.

25-26.  There is no genuine dispute of material fact.  Plaintiff's additional assertions of fact in response to No. 21 are immaterial and do not contradict Defendant's assertions in Paragraph 25 and 26.

27.     There is no genuine dispute of material fact.  Plaintiff's additional assertions are immaterial and do not contradict Defendant's assertions in ¶27.

28.     There is no genuine dispute of material fact.  Plaintiff's additional assertions in ¶27 are immaterial and do not contradict Defendant's assertions in ¶28.

29. There is no genuine dispute of material fact. Plaintiff's additional assertions in ¶27 are immaterial and do not contradict Defendant's assertions in ¶29.

30. No dispute.

31. There is no genuine dispute of material fact. The additional testimony cited by Plaintiff is immaterial and does not create a dispute with Defendant's assertions in ¶31.

32-33. No dispute.

34. There is no genuine dispute of material fact. Although Defendant disputes that Mr. Myers' testimony about this incident is inadmissible hearsay, for purposes of this motion, the incident is immaterial.

35. There is no genuine dispute of material fact. Although Defendant disputes that Mr. Myers' testimony about this incident is inadmissible hearsay, for purposes of this motion, the incident is immaterial.

36. There is no genuine dispute of material fact. Although Defendant disputes that Mr. Myers' testimony about this incident is inadmissible hearsay, for purposes of this motion, the incident is immaterial.

37. There is no genuine dispute of material fact. Plaintiff's additional assertions in ¶ 34 are immaterial and do not contradict ARAMARK's assertions in ¶ 37.

38-39. No dispute.

40. There is no genuine dispute of material fact. The additional testimony cited by Plaintiff is immaterial and does not create a dispute with Defendant's assertions in ¶ 40.

41. Defendant disputes that ¶ 41 constitutes inadmissible hearsay, but for purposes of this motion the incident is immaterial.

42. No dispute.

43. No dispute.

44. Defendant disputes that Plaintiff's own testimony in ¶ 44 is inadmissible hearsay because it is a statement made by a Party-Opponent. *See* Fed. R. Evid. 801(d)(2).

45. There is no genuine dispute of material fact. The additional testimony cited by Plaintiff is immaterial and does not create a dispute with Defendant's assertions in ¶ 45.

46. There is no genuine dispute of material fact. The fact that Mr. Odeyale testified that he did not receive the written disciplinary warning does not create a dispute with Myers' testimony that he prepared it.

47. There is no genuine dispute of material fact. Although Plaintiff disputes ¶47 as immaterial, Plaintiff does not dispute the underlying fact that the Complaint alleges only a single incident where Myers became physical and used a racially derogatory name with Plaintiff.

48. There is no genuine dispute of material fact. There is no dispute over the fact that the forklift incident, regardless of whether it was disciplinary in nature, occurred on October 6, 2004.

49. There is no genuine dispute of material fact. The additional testimony cited by Plaintiff is immaterial and does not create a dispute with Defendant's assertions in ¶ 49.

50. There is no genuine dispute of material fact. Although Plaintiff disputes ¶ 50 as immaterial, Plaintiff does not dispute the underlying fact that the Complaint contains no other allegations of racial hostility or harassment.

51. There is no genuine dispute of material fact. The additional testimony cited by Plaintiff is either immaterial or is purely elaborative and does not create a dispute with Defendant's assertions in ¶ 51.

52. No dispute.

53. There is no genuine dispute of material fact. The additional testimony cited by Plaintiff does not create a dispute with the fact that Ms. Janey testified that she wished to withdraw her statement because it is not true and correct. Furthermore, contrary to Plaintiff's assertion, the material cited in support of ¶ 53 does support the assertion that Ms. Janey's Declaration is not true and correct.

> Q:         If I can just ask a couple more questions –
>
> Ms Janey:   No, I have one. If I wanted to withdraw this, is it too late or –
>
> Q:         No.
>
> Ms. Janey:  That's what I'd like to do.
>
> Q:         So, are you saying that this statement is no longer true and correct?
>
> Counsel:    Objection.
>
> Ms. Janey:  Yes.

Janey Dep. 58.

54. No dispute.

55. Plaintiff disputes Defendant's assertions only as they are incomplete, but does not dispute the testimony cited by Defendant in ¶55. Defendant agrees that Myers testified about a meeting during which Mr. Noble was present as a witness during which Mr. Odeyale resigned his employment. For purposes of this motion, however, Defendant assumes Plaintiff's version of the facts to be true and respectfully submits that Plaintiff has not proffered sufficient evidence to survive summary judgment.

56. Plaintiff disputes Defendant's assertions only as they are incomplete, but does not dispute the testimony cited by Defendant in ¶56. Defendant agrees that Myers testified about a

meeting during which Mr. Noble was present as a witness during which Mr. Odeyale resigned his employment. For purposes of this motion, however, Defendant assumes Plaintiff's version of the facts to be true and submits that Plaintiff has not proffered sufficient evidence to survive summary judgment.

57. Plaintiff disputes Defendant's assertions only as they are incomplete, but does not dispute the testimony cited by Defendant in ¶56. Defendant agrees that Myers testified about a meeting during which Mr. Noble was present as a witness during which Mr. Odeyale resigned his employment. For purposes of this motion, however, Defendant assumes Plaintiff's version of the facts to be true and submits that Plaintiff has not proffered sufficient evidence to survive summary judgment.

58. No dispute.

59. No dispute.

**B.  Plaintiff's Testimony Does Not Establish A Prima Facie Case of Hostile Work Environment**

**1.  Plaintiff Bears The Burden Of Establishing That Any Alleged Harassment Was Based On Race.**

Plaintiff argues that the Court should consider certain race neutral incidents, bearing no ostensible relationship to Plaintiff's race, in determining whether Plaintiff was subject to a hostile work environment. *See* Opp. Memo at 7-9. Plaintiff's legal basis for this position is that ARAMARK has failed to meet its burden to produce the "requisite factual predicate" by which this Court could determine whether these incidents were, in fact, race-based. *Id.* at 8. Plaintiff cites no legal authority for this proposition. Nor does any exist. As set forth in Defendant's initial Memorandum of Law ("Def. Mem."), it is the Plaintiff's burden (not Defendant's) to establish that harassment was based on race. *See Chaple v. Johnson*, 453 F. Supp. 2d 63, 73-74 (D.D.C. 2006) (Collyer); Def. Mem. at 4. Because Plaintiff has failed to meet this burden, the

neutral incidents that Plaintiff testified to as constituting a hostile work environment should not be considered by this Court.

### 2. Plaintiff Has Failed To Proffer Sufficient Evidence To State A Claim For Hostile Work Environment.

Plaintiff's Opposition goes to great lengths to establish the highly offensive nature of the use of racial slurs, particularly the N-word, in the workplace. Defendant does not disagree. However, Plaintiff has presented insufficient evidence to substantiate those weighty allegations. In fact, the only evidence that Plaintiff can point to in support of his allegations is his own self-serving deposition testimony.

A plaintiff's testimony can, at times, be sufficient to establish a claim for hostile work environment, however, Defendant respectfully submits that this is not such a case. In *Richard v. Bell Atlantic Corp.*, the court granted summary judgment for the employer on plaintiff's hostile work environment claim. 167 F. Supp. 2d 34, 43 (D.D.C. 2001). Plaintiff alleged that she was falsely evaluated, excluded from company sponsored outings and celebrations, segregated, falsely accused of lacking motivation, denied a personal computer, referred to as the "N" word, denied on-the-job training, involuntarily transferred, and denied numerous promotions. *Id.* at 42. The Court concluded that although plaintiff cited to depositions of other witnesses, the witness testimony did not support her allegations in any meaningful way, and plaintiff was left to rely solely on her own testimony. *Id.* The court conceded that, in some cases, a plaintiff's own testimony *will* be enough to allow a hostile work environment claim to proceed to a jury. *Id.* However, in *Richard*, the court concluded that the plaintiff's allegations alone were insufficient. *Id.*

Likewise here, Plaintiff's allegations fall short of meeting his burden to establish a hostile work environment claim. Plaintiff only has a specific recollection of incidents that occurred on

October 6, 2004.  His remaining testimony consists of vague testimony of other general incidents for which he cannot provide a time or context, and which occurred over a very short period of time.  In fact, Plaintiff cannot substantiate these allegations in any way.  This scarcity of evidence should not be sufficient to withstand summary judgment.

Finally, as set forth more fully in Defendant's initial Memorandum, courts do consider the duration of harassment in determining whether a hostile work environment was severe and pervasive.  *See Ramey v. Potomac Electric Power Co.,* No. Civ. A. 04-2088, 2006 WL 1102836, at *5 (D.D.C. Mar. 31, 2006); Def. Mem. at 7.  Here, the Court should consider the brevity of Mr. Odeyale's employment with ARAMARK as a factor in its analysis, particularly in light of the absence of any evidence beyond Mr. Odeyale's own testimony to establish his hostile work environment claim.[1]

**C.     Plaintiff Has Failed To Offer Any Evidence To Show That The Termination Of His Employment Was Either Discriminatory Or Retaliatory.**

In his Opposition brief, Plaintiff also fails to meet his burden of proving either direct evidence of discrimination or retaliation or pretext under the *McDonnell Douglas* framework.

**1.     Contrary To His Assertions, Plaintiff Has Not Adduced Direct Evidence of Discrimination or Retaliation**

Plaintiff asserts that he should survive summary judgment because he has adduced direct evidence of both discrimination and retaliation.  Plaintiff is wrong.  Direct evidence of discrimination is evidence that, if believed by the fact finder, proves the particular fact in question *without any need for inference. . . .* [Such evidence] includes any statement or written document showing a discriminatory motive *on its face."  Davis v. Ashcroft*, 355 F. Supp. 2d 330,

---

[1] Plaintiff's Opposition misstates ARAMARK's position on this point and then proclaims it to be irrational.  *See* Pl. Opp. at 12.  ARAMARK is not proposing a bright line rule with respect to the length of an employee's tenure.  *See* Def. Mem. at 7.  Rather, ARAMARK is asserting that in evaluating Mr. Odeyale's work environment, the Court should consider the length of his employment *as a factor* in its analysis.

340 (D.D.C. 2005) (emphases in original).  Here, Plaintiff asserts that Mr. Noble's statement "Phil Myers don't like you, he cannot work with you, so you're terminated." constitutes direct evidence only *when coupled with* several other pieces of circumstantial evidence.  *See* Pl. Opp. at 13.  Mr. Noble's statement cannot constitute direct evidence of discrimination precisely because to reach the conclusion that the statement is discriminatory, the fact finder must consider several other pieces of circumstantial evidence.   Plaintiff argues, in spite of the fact that Mr. Noble's statement is not racial in any way, that along with the evidence of Mr. Myers' use of racial epithets and Mr. Noble's knowledge of this habit, that he has established direct evidence.

Several points merit clarification.  First, Plaintiff misstates the record evidence because there is no evidence that Mr. Noble had any knowledge of any alleged "habit" of Mr. Myers'.  Plaintiff never testified that Mr. Noble overheard Mr. Myers ever call him a racial epithet.  In fact, the only evidence that Mr. Noble would have had any knowledge of any use of racial epithets would have been Mr. Odeyale's own complaint about it the meeting with Mr. Noble where his employment was allegedly terminated.

Second, Plaintiff's legal support for this position is inapposite here.  Plaintiff cites *Bibbs v. Block,* 778 F.2d 1318 (8th Cir. 1986) and *Brewer v. Muscle Shoals Bd. of Education*, 790 F.2d 1515 (11th Cir. 1986) in support of his argument that Mr. Noble's statement constitutes direct evidence of race discrimination.  Both *Bibbs* and *Brewer*, however, involve situations where the statements made by decision-makers were overtly racial.  *Bibbs*, 778 F. 2d  at 1319-1320 (finding direct evidence of race discrimination when selection committee member referred to plaintiff as a "black militant" and referred to another candidate as "boy" and "nigger"); *Brewer*, 790 F.2d at 1521 (finding direct evidence of race discrimination where Board member did not

want to see school system "nigger-rigged."). Here, Mr. Noble's statement was neutral on its face.

Courts have routinely held that similar facially race-neutral statements like Mr. Noble's do not constitute direct evidence of discrimination. *See Twymon v. Wells Fargo & Co.,* 462 F. 3d 925, 934 (8th Cir. 2006) (refusing to speculate and extrapolate racial animus from statements such as "you don't know your place"); *Gaines v. Nordstrom, Inc.,* No. 05-CV- 689, 2006 WL 2711779 (D. Or. Sept. 19, 2006) (comments that are race-neutral on their face and require an inference or presumption to arrive at the conclusion the speaker had discriminatory intent are not direct evidence); *Chambers v. Walt Disney World, Co.,* 132 F. Supp. 2d 1356, 1365 (M.D. Fla. 2001) (direct evidence includes "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [a protected trait]") *quoting Carter v. City of Miami,* 870 F.2d 578, 581-82 (11th Cir. 1989); *Brown v. Small,* 437 F. Supp. 2d 125, 130, n.7 (D.D.C. 2006) ("Direct evidence of discrimination is evidence that, if believed by the fact finder, proves the particular fact in question *without any need for inference.*") (emphasis in original). Plaintiff's argument requires the fact finder to *infer* racial or retaliatory animus from Mr. Noble's neutral statement, "Phil Myers don't like you." As such, this statement cannot constitute direct evidence of either discrimination or retaliation.

  **2.** **Plaintiff Has Failed To Establish That Mr. Noble's Alleged Decision To Terminate His Employment Was Pretext For Either Race Discrimination Or Retaliation**

Plaintiff has also failed to show that Mr. Noble's stated reason for Plaintiff's termination was pretext for either race discrimination or retaliation. The only evidence that Plaintiff sets forth to demonstrate that his alleged termination was pretext for either race discrimination or retaliation is (1) the existence of a memorandum confirming Plaintiff's resignation that was

typed, but not signed, by Phil Myers; and (2) Plaintiff's theory that Mr. Myers and Mr. Noble "fabricated a story to cover up Mr. Odeyale's termination." *See* Opp. Mem. at 15-17, 19.

First, Plaintiff attempts to show pretext by asserting that Phil Myers had no explanation for why a memo was typed by Mr. Myers for Mr. Noble's signature. Myers testified, however, that the reason Mr. Noble would have signed the letter was that "he was fully aware based on the events that happened that morning." Myers Dep. at 90. Critically, Plaintiff's Opposition ignores the fact that Mr. Noble had just started as General Manager for ARAMARK and Mr. Myers was preparing to transition the day-to-day operations of the Convention Center to Mr. Noble. Myers Dep. 21-22; SMF ¶¶ 8-9. Myers testified that on any significant matters, he was keeping Mr. Noble involved because he needed to be involved on any decisions that would affect him in the future. SMF ¶ 9.

Second, Plaintiff's broader theory that Myers and Noble conspired to (1) terminate Mr. Odeyale because of his race; and (2) fabricate a memo confirming his resignation requires several leaps of the imagination, none of which are supported by record evidence. First, Plaintiff has absolutely no evidence of any sort of racial bias or animus on the part of Mr. Noble, the alleged decision-maker. Plaintiff testified that he had never heard Mr. Noble make a racist remark. SMF at ¶ 58. Nor did Plaintiff introduce any evidence that Mr. Noble treated similarly situated white employees differently. Even Plaintiff's own testimony is uncertain on this issue. When asked, Mr. Odeyale "d[id]n't know" whether Noble had terminated his employment because of his race, and he has produced no evidence that even suggests that Mr. Noble did terminate him because of his race.

Second, Plaintiff has no evidence of any racist conspiracy between Noble and Myers. In fact, it is undisputed that Mr. Noble began him employment with ARAMARK during the week

of October 1, 2004. SMF at ¶ 9. It is difficult to imagine that within days of beginning his employment, Mr. Noble and Mr. Myers would have discovered a shared racial animus and decided to act on it by terminating Mr. Odeyale's employment and then fabricating a memo to cover it up. This highly speculative and improbable theory of Plaintiff's is not supported by any record evidence.

Finally, Plaintiff has also failed to produce any evidence that Mr. Noble was motivated to act in retaliation for Plaintiff's complaints about Mr. Myers. Absent from Plaintiff's Opposition is any suggestion that Mr. Noble's alleged decision to terminate him was because of his protected activity. *See Black v. Tomlinson*, 425 F. Supp. 2d 101, 120 (D.D.C. 2006) (granting summary judgment where plaintiff failed to establish that a supervisor "didn't like her" and regarded her as a "troublemaker" because of her protected activity).

### III.   CONCLUSION

WHEREFORE, for the foregoing reasons, and for those reasons set forth in Defendant's Motion for Summary Judgment and accompanying Memorandum of Law, ARAMARK respectfully requests that the Court grant its Motion for Summary Judgment in its entirety.

Respectfully submitted:

　　　/s Katherine J. Emig　　　
Grace E. Speights (D.C. Bar No. 392091)
Katherine J. Emig (D.C. Bar No. 496410)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
Phone:  (202) 739-3000
Fax:  (202) 739-3001

*Counsel for Defendant*
*ARAMARK Management Services Limited Partnership*

Dated:  May 10, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed electronically and served via U.S. mail postage prepaid, a copy of the foregoing Defendant ARAMARK's Reply in Further Support of Defendant ARAMARK's Motion for Summary Judgment, this 10th day of May 2007, upon counsel for Plaintiff:

>Michael J. Hoare, Esq.
>Michael J. Hoare, P.C.
>1101 14th Street, N.W., Suite 710
>Washington DC 20005

>/s/ Katherine J. Emig
>Katherine J. Emig