UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SHOLA ODEYALE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-2250 (RMC) |
| ) | |
| ARAMARK MANAGEMENT ) | |
| SERVICES LIMITED PARTNERSHIP, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Shola Odeyale was employed by Aramark Management Services Limited Partnership ("Aramark") as a custodian for one week during which he worked a mere four days. Mr. Odeyale, who is African American, contends that his supervisor called him racially derogatory names and that when he complained, he was terminated. Mr. Odeyale brought this suit alleging, among other claims, hostile work environment, discrimination, and retaliation. Aramark moved for partial summary judgment. The motion for summary judgment will be granted with respect to the hostile work environment claim. Summary judgment will be denied, however, regarding the claims for discrimination and retaliation.

**I. FACTS**

Mr. Odeyale had been employed by Washington Convention Center Authority ("WCCA") as a housekeeping supervisor for three years when WCCA decided to outsource its housekeeping services. WCCA contracted for such services with Aramark, and Aramark was

required to offer displaced employees like Mr. Odeyale a right of first refusal in a comparable position for at least a six-month period during which the employee could not be discharged except for cause. Compl. ¶ 5. Aramark hired Mr. Odeyale as a housekeeping supervisor on October 1, 2004. Mr. Odeyale worked for Aramark a total of four days — October 1, 2, 5, and 6.[1] District Manager Phillip Myers was Mr. Odeyale's supervisor. Mr. Myers was in charge of starting up Aramark's contract at the Convention Center, and then General Manager Michael Noble was to take over the day-to-day management of Aramark's services at the Convention Center. Mr. Myers was also Mr. Noble's superior.

Mr. Odeyale alleges, without asserting any details, that Mr. Myers called him names "frequently" on October 2, 5, and 6.[2] Pl.'s Ex. 1, Odeyale Dep. at 141. Mr. Myers put Mr. Odeyale to work in a large store room moving 100 pound bags of sand, snow salt, and chemicals from the floor to upper shelves. Mr. Odeyale told Mr. Myers that he did not think moving the items was a good idea, that these heavy items should remain on the floor and lighter items should remain on upper shelves. Pl.'s Ex. 1, Odeyale Dep. at 71-72. Mr. Myers insisted that the items be moved as he had requested. On October 6, Mr. Odeyale began using a forklift to move the heavy items. Mr. Myers became angry and stopped Mr. Odeyale because Mr. Odeyale was not properly certified to operate the forklift. *Id*. at 121-24. Mr. Odeyale resumed moving the items by hand; he had to use a ladder to move the items to the higher shelves. Mr. Myers allegedly then yelled at Mr. Odeyale, calling him a "nigger" and "chicken," and pulled Mr. Odeyale by the belt of his pants off the ladder.

---

[1] October 3 and 4, 2004, fell on a Sunday and Monday, Mr. Odeyale's days off.

[2] Mr. Odeyale stated at his deposition that Mr. Myers did not call him names on September 30, when he was hired, and he could not recall whether Mr. Myers called him names on October 1, his first day of work. Pl.'s Ex. 1, Odeyale Dep. at 141.

*Id*. at 132-34, 144.  Mr. Odeyale landed on the floor, hitting his forehead and back.  *Id*. at 136.

Mr. Odeyale reported the incident immediately after it happened to Selita Janey, the security guard who was nearby at the time.  *Id*. at 138-139.  Mr. Odeyale alleges that Ms. Janey asked him, "Who is calling you nigger?"  *Id*. at 139.  Ms. Janey signed a declaration on October 18, 2004, indicating that she heard Mr. Myers call Mr. Odeyale a "nigger" in a loud voice on one occasion.  Pl.'s Ex. 3, Janey Decl.  Later at her deposition, Ms. Janey testified that she was not 100% certain of what she heard due to the fact she was 50 feet away and there was an echo.  Pl.'s Ex. 4, Janey Dep. at 22-24 & 33; *see also id*. at 45 (Janey no longer agreed with her declaration).

The next day, October 7, 2004, Mr. Odeyale met with Mr. Noble to complain about Mr. Myers.  He told Mr. Noble that Mr. Myers pulled him from the ladder, would not let him take his diabetes medicine, required him to move heavy items without assistance, and called him "nigger" and "chicken."  Pl.'s Ex. 1, Odeyale Dep. at 129-30.  Mr. Noble responded, "Phil Myers don't like you, he cannot work with you, so you're terminated."  *Id*. at 130.

Accordingly, Mr. Odeyale filed a Complaint[3] alleging:

Count I, violation of the D.C. Human Rights Act, D.C. Code § 2-1402.11(a)(1), due to race discrimination;

Count II, violation of the D.C. Human Rights Act, *id*. § 2-1402.61, due to retaliation; and

---

[3] Mr. Odeyale filed the original complaint in D.C. Superior Court.  Aramark removed the case to federal court under 28 U.S.C. § 1441 based on diversity jurisdiction. Mr. Odeyale resides in the District of Columbia.  Aramark is a limited partnership, and thus its citizenship is determined by looking at the citizenship of all of its general and limited partners.  At the time the complaint was filed, Aramark was 99% owned by Aramark Corporation, a company incorporated under the laws of Delaware with its principal place of business in Pennsylvania.  The remaining 1% was owned by Aramark Smms, LLC, which was 100% owned by Aramark Corporation.  Mr. Odeyale seeks damages in excess of $75,000.  Thus, diversity jurisdiction is proper.  *See* 28 U.S.C. § 1332.

>Count III, violation of the D.C. Payment and Collection of Wages.
>Act, *id*. § 32-1303.[4]

Aramark filed a motion for summary judgment on Counts I and II.[5]

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a

---

[4] The original Complaint alleged three additional counts that were dismissed by stipulation of the parties and approved by the Court in a Minute Entry Order filed January 6, 2006.

[5] Aramark does not seek summary judgment with respect to Count III. Def.'s Mem. of P. & A. in Supp. of Mot. for Summ. J. at 1 n.1.

reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

The D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01 - 1403.17, prohibits employers from discharging or otherwise discriminating against an individual with respect to the terms and conditions of employment based upon the individual's membership in a protected category, including race. D.C. Code § 2-1402.11(a)(1). Count I of Mr. Odeyale's Complaint alleging discrimination included both a discriminatory discharge claim and a hostile work environment claim.

#### A. Hostile Work Environment

To establish a prima facie hostile work environment claim, a plaintiff must demonstrate (1) that he is a member of a protected class, (2) that he was subject to unwelcome harassment, (3) that the harassment occurred because of his race, (4) that the harassment affected a term, condition, or privilege of employment, and (5) that the employer knew or should have known of the harassment, and failed to act to prevent it. *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).[6] "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)

---

[6] Courts look to federal cases interpreting Title VII, 42 U.S.C. § 2000e-16, in construing the DCHRA. *Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131, 134 (D.D.C. 2004).

(quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)) (internal quotation marks omitted). Title VII, and thus the DCHRA, is violated when a plaintiff demonstrates that the "workplace is permeated with discriminatory intimidation, ridicule, and insult" and that this behavior is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 21.

In determining whether a hostile work environment claim is substantiated, a court must look at all the circumstances of the plaintiff's employment, specifically focusing on such factors as the frequency of the discriminatory conduct, its severity, whether it was threatening and humiliating or was merely offensive, and whether it unreasonably interfered with the employee's work performance. *Harris*, 510 U.S. at 23. The conduct must be sufficiently extreme to constitute an alteration in the conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Consequently, "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 91). Further, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 778. A plaintiff must demonstrate that the alleged events leading to the hostile work environment were connected, since "discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult." *Lester*, 290 F. Supp. 2d at 33 (citing *AMTRAK v. Morgan*, 536 U.S. 101, 115-16 (2002)). "Workplace conduct is not measured in isolation." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001).

For example, in *George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005), the D.C. Circuit held that statements by three employees over a six-month period telling a plaintiff to "go back where she

-6-

came from," separate acts of yelling and hostility, and allegations that the plaintiff was not given the type of work she deserved, were isolated instances that did not rise to the level of severity necessary to find a hostile work environment. *Id*. at 416-17. Similarly, in *Singh v. United States House of Representatives*, 300 F. Supp. 2d 48, 54-57 (D.D.C. 2004), this Court found that a plaintiff's allegations that her employer humiliated her at important meetings, screamed at her in one instance, told her to "shut up and sit down" in one instance, and was "constantly hostile and hypercritical" did not amount to a hostile work environment, even though these actions may have been disrespectful and unfair.

Mr. Odeyale alleges that Mr. Myers "frequently" called him names during the second, third, and fourth days of his employment at Aramark. The only specific incident of name calling that Mr. Odeyale points to is the October 6 incident where Mr. Myers called him "nigger" and "chicken"while pulling him from a ladder. Mr. Odeyale's allegation that he was subject to name calling for three days is insufficient to assert a hostile environment claim. *See, e.g.*, *Akers v. Alvey*, 338 F.3d 491, 499 (6th Cir. 2003) (harassment over a two week period did not rise to the level of "severe or pervasive"); *Conto v. Concord Hosp., Inc.*, 265 F.3d 79, 82 (1st Cir. 2001) (events during the four day period before plaintiff's discharge did not demonstrate a trialworthy issue on a hostile environment claim); *Ramey v. Potomac Elec. Power Co.*, 468 F. Supp. 2d 51, 58 (D.D.C. 2006) (allegations of harassment over a two day period were insufficient to establish a hostile work environment). The conduct alleged, while offensive, is not sufficiently severe or pervasive to constitute a hostile work environment. "'[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII."

*Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 91).[7]

      B.  Termination/Retaliation

Mr. Odeyale alleges that Aramark discriminated and retaliated against him by terminating his employment.[8] With regard to the discrimination claim, he has made out a prima facie case — he is African American and he suffered an adverse action when Aramark terminated his employment.[9] Mr. Odeyale also has presented a prima facie case of retaliation: (1) he engaged in

---

[7] Mr. Odeyale's other allegations, that Mr. Myers would not let him take his diabetes medicine and that Mr. Myers required him to move heavy items without assistance, are unrelated to Mr. Odeyale's race and cannot support a claim for hostile work environment. *See, e.g.*, *Kelley v. Billington*, 370 F. Supp. 2d 151, 157 (D.D.C. 2005) (hostile work environment must be the result of discrimination based on plaintiff's protected status).

[8] Aramark asserts that it did not terminate Mr. Odeyale and that Mr. Odeyale resigned on October 8. Mr. Myers sent a letter to Mr. Odeyale on October 12, 2004, stating:

> In follow-up to our meeting on Friday, October 8, 2004, you expressed your intent to resign your position with Aramark effective immediately. I have also enclosed the following documents in [sic] which you refused to sign or take with you when you walked out of my office.
>
> Verbal Counseling Dated 10/6/04
>
> Written Warning Dated 10/6/04
>
> Call in Procedures Dated 10/7/04

Pl.'s Ex. 7, Letter to Mr. Odeyale. While Mr. Myers wrote the letter, Mr. Noble signed it. Pl.'s Ex. 5, Myers Dep. at 90. Mr. Odeyale argues that this letter was fabricated to cover up the discriminatory termination. The Court disregards this factual dispute because, for the purpose of summary judgment, the Court accepts as true the evidence presented by Mr. Odeyale and draws all justifiable inferences in his favor. *Anderson*, 477 U.S. at 255.

[9] In order to demonstrate a discrimination claim under the DCHRA, a plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) and the adverse action gives rise to an inference of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). A plaintiff

protected activity when he complained to Mr. Noble about Mr. Myers's conduct; (2) he suffered from a materially adverse act because he was terminated; and (3) he has shown a causal connection because when he complained, he was promptly discharged.[10] Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant meets this burden, then the plaintiff must have the opportunity to prove, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons, but were a "pretext" for discrimination. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804.

The question thus presented is whether Aramark's alleged reason for discharging Mr. Odeyale was legitimate and nondiscriminatory or whether it was a pretext for discrimination or retaliation. This presents genuine issues of material fact, hinging on the credibility of the witnesses. Summary judgment on the claims of discrimination and retaliation must be denied.

## IV. CONCLUSION

For the reasons explained above, Aramark's motion for summary judgment [Dkt. #18] will be granted in part and denied in part. The hostile work environment portion of Count I will be

---

can prove his claim through direct evidence or through indirect evidence under the burden-shifting standard established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[10] The DCHRA prohibits an employer from retaliating against an employee because he exercised any right granted by the DCHRA. D.C. Code § 2-1402.61; *see* 42 U.S.C. § 2000e-3(a) (similar provision under Title VII). To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered from a materially adverse act; and (3) a causal connection exists between the protected activity and the employer's act. *See Burlington N. & Santa Fe Ry. v. White*, 126 S. Ct. 2405 (2006); *Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006).

dismissed.[11]  A memorializing order accompanies this Memorandum Opinion.


Date: October 29, 2007                              /s/
                                            ROSEMARY M. COLLYER
                                            United States District Judge

---

[11] Count I (discriminatory discharge), Count II (retaliation), and Count III (violation of D.C. Payment and Collection of Wages Act) remain at issue.